IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: Christ Hospital, Debtor- a New Jersey Not-for- profit corporation<br><br>PRIME HEALTHCARE SERVICES, INC.,<br><br>    Appellant,<br><br>  v.<br><br>HUDSON HOSPITAL PROPCO, INC., HUDSON HOSPITAL OPCO, LLC, HUDSON HOSPITAL HOLDCO, LLC, and VIVEK GARIPALLI<br><br>    Appellees. | Civil Action No. 2:14-cv-472-ES |

---

**APPELLANT'S BRIEF**

---

**LAW OFFICES OF WILLIAM S. KATCHEN, LLC**
210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
Telephone: (973) 457-0130

**McCUSKER, ANSELMI, ROSEN & CARVELLI, PC**
210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
Telephone: (973) 635-6300
Facsimile: (973) 635-6363

*Counsel for Prime Healthcare Services, Inc.*

On the Brief:
William S. Katchen
Bruce S. Rosen
Sarah L. Fehm

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES..........................................iii

PRELIMINARY STATEMENT..........................................1

STATEMENT OF FACTS.............................................5

LEGAL ARGUMENT................................................14

    I.     STANDARD OF REVIEW....................................14

    II.    THE BANKRUPTCY COURT HAD NO JURISDICTION TO
            ENJOIN PRIME HEALTHCARE'S COMMON LAW CLAIMS
            AGAINST HUDSON......................................17

          A. Sections 1334 and 157 Do Not Confer Jurisdiction
             Over Prime Healthcare's Common Law Claims
             Against Hudson ...................................18
             1. Prime Healthcare's common law claims against
                Hudson are not "core."........................19
             2. Prime Healthcare's common law claims against
                 Hudson are not "related-to" the Christ
                Hospital bankruptcy...........................21
          B. Bankruptcy Court Jurisdiction Is Limited Post-
             Confirmation .....................................25
          C. The Bankruptcy Court Erroneously Interpreted the
             Scope of Bankruptcy Court Jurisdiction ...........27
             1. Section 157 does not confer substantive rights
                 otherwise unavailable under the Bankruptcy
                Code..........................................28
             2. The Bankruptcy Court failed to make
                 jurisdictional findings.......................31
             3. Prime Healthcare's common law claims against
                 Hudson are not interests in Christ Hospital
                 property......................................32
              4. Prime Healthcare's common law claims against
                 Hudson do not conflict with the Bankruptcy
                 Court's finding that Hudson was a "good faith
                 purchaser.....................................37
              5. Prime Healthcare's common law claims against
                 Hudson are not an "attack on the fundamentals
                 of the sale...................................39

III. THE BANKRUPTCY COURT'S INJUNTCION VIOLATES PRIME
     HEALTHCARE'S DUE PROCESS RIGHTS......................41

     A. Prime Healthcare Could Not Have Been on Notice
        That Its Commons Law Claims Against Hudson
        Would Be Enjoined ..................................42
     B. The Injunctive Provisions of the Bankruptcy
        Court's Orders Are Unenforceable ..................46
     C. The Injunction Provisions Do Not Contain the
        Specific or Conspicuous Language Necessary to
        Provide Adequate Notice ...........................49
     D. Prime Healthcare Did Not Consent to the
        Injunction of Its Common Law Claims Against
        Hudson ............................................52
     E. The Bankruptcy Court Did Not Make Any Findings
        That the Injunction Was Fair to Prime Healthcare
        Or Necessary to Effectuate Administration of the
        Christ Hospital Bankruptcy Estate .................54
     F. Injunction of Prime Healthcare's Common Law
        Claims Against Hudson Deprives Prime Healthcare
        of a Jury Trial ...................................55

IV.  THE BANKRUPTCY COURT'S DECEMBER 3,2013 ORDER
     CONTRAVENES PRINCIPLES OF FEDERAL-STATE COMITY.......56

     A. The Bankruptcy Court Should Have Abstained from
        Deciding Hudson's Motion for an Injunction ........57
     B. Hudson Waived Its Rights to Bankruptcy Court
        Review ............................................59
     C. The Bankruptcy Court Did Not Have the Power to
        Overrule the New Jersey Superior Court ............60
     D. The Bankruptcy Court's Order Condones Hudson's
        Forum Shopping ....................................61

V.   THE BANKRUPTCY COURT'S DECEMBER 20, 2013 ORDER
     IS AN ABUSE OF DISCRETION AND PRIME HEALTHCARE'S
     STATE COURT ACTION SHOULD NOT BE DISMISSED PENDING
     APPEAL...............................................63

     A. Legal Standard ...................................63
     B. Likelihood of Success on the Merits ..............64
     C. Irreparable Injury If the Stay Is Not Granted ....65
     D. Harm to Other Parties ............................69
     E. Public Interest ..................................69

CONCLUSION.................................................70

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>In re Abbotts Dairies of Pennsylvania, Inc.</u>,
   788 F.2d 143 (1986) .........................................38

<u>ACLU v. Black Horse Pike Reg'l Bd. of Educ.</u>,
   84 F.3d 1471 (3d Cir. 1996) ................................16

<u>In re Allegheny Health Educ. & Research Found.</u>,
   383 F.3d 169 (3d Cir. 2004) ...........................26, 31

<u>Am. Friends Serv. Comm. v. Webster</u>,
   485 F. Supp. 222 (D.D.C.1980) .............................67

<u>Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.</u>,
   42 F.3d 1421 (3d Cir. 1994) ...............................69

<u>Ass'n for Fairness in Bus., Inc. v. New Jersey</u>,
   82 F. Supp. 2d 353 (D.N.J. 2000) ..........................66

<u>Bd. of Trustees of Teamsters Local 863 Pension Fund v.
   Foodtown, Inc.</u>,
   296 F.3d 164 (3d Cir. 2002) ...............................36

<u>In re Brown</u>,
   244 B.R. 62 (Bankr. D.N.J. 2000) ..........................61

<u>Celotex Corp. v. Edwards</u>,
   514 U.S. 300 (1995) ...................................21, 29

<u>In re CHC Indus., Inc.</u>,
   389 B.R. 767 (Bankr. M.D. Fla. 2007) ......................39

<u>Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.</u>,
   974 F.2d 775 (7th Cir. 1992) ..............................15

<u>In re Chrysler LLC</u>,
   576 F.3d 108 (2d Cir. 2009) <u>cert. granted, judgment
   vacated sub nom. Indiana State Police Pension Trust v.
   Chrysler LLC</u>, 558 U.S. 1087, 130 S. Ct. 1015, 175 L.
   Ed. 2d 614 (2009) <u>and vacated sub nom. In re Chrysler,
   LLC</u>, 592 F.3d 370 (2d Cir. 2010) ..........................34

<u>In re Combustion Eng'g, Inc.</u>,
   391 F.3d 190 (3d Cir. 2004) ..........................*passim*

Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't
    of Health & Human Servs., 724 F.3d 377 (3d Cir. 2013)
    cert. granted, 134 S. Ct. 678 (U.S. 2013) (Jordan, J.,
    dissenting) ...............................................66

Connection Distrib. Co. v. Reno,
    154 F.3d 281 (6th Cir. 1988) ..............................70

In re Cont'l Airlines,
    203 F.3d 203 (3d Cir. 2000) ..........................*passim*

Copelin v. Spirco, Inc.,
    182 F.3d 174 (3d Cir. 1999) ...........................23, 24

Duraco Prods., Inc. v. Joy Plastic Enter., Ltd.,
    40 F.3d 1431 (3d Cir.1994) ................................69

Durfee v. Duke,
    375 U.S. 106 (1963) .......................................57

E.B. v. Poritz,
    914 F.Supp. 85 (D.N.J. 1996) rev'd on other grounds
    E.B. v. Verniero, 119 F.3d 1077 (3d Cir. 1997) ............66

ECRI v. McGraw-Hill, Inc.,
    809 F.2d 223 (3d Cir. 1987) ...............................65

Edmonston v. Sisk,
    156 F.2d 300 (10th Cir. 1946) .............................57

In re Elmoral, Inc.,
    No. 13-1467, 2014 WL 259870 (3d Cir. Jan. 24, 2014) ...35, 36

Elrod v. Burns,
    427 U.S. 347 .............................................65

England v. La. State Bd. Of Med. Exam'rs,
    375 U.S. 411 (1964) ...................................59, 60

Everett Labs., Inc. v. Breckenridge Pharm., Inc.,
    573 F. Supp. 2d 855 (D.N.J. 2008) .........................68

In re Exide Technologies,
    544 F.3d 196 (3d Cir. 2008) ...............................24

Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,
    544 U.S. 280 (2005) .......................................58

Family Kingdom, Inc. v. EMIF New Jersey Ltd. P'ship,
    225 B.R. 65 (D.N.J. 1998) ...................................63

In re Farmland Indus., Inc.,
    376 B.R. 718 (Bankr. W.D. Mo. 2007) aff'd, 408 B.R. 497
    (B.A.P. 8th Cir. 2009) aff'd, 639 F.3d 402 (8th Cir.
    2011) ...............................................38, 39, 40

In re Federal Mogul Global Inc.,
    684 F.3d 355 (3d Cir. 2012) ................................25

Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV,
    209 F.3d 252 (3d Cir. 2000) ................................41

Food King, Inc. v. Norkus Enterprises, Inc.,
    CIV A 04-1500 MLC, 2006 WL 3674997 (D.N.J. Dec. 13,
    2006) ......................................................40

Freeman & Bass, P.A. v. State of N.J. Comm'n of
    Investigation,
    359 F. Supp. 1053 (D.N.J. 1973) ............................67

FutureSource LLC v. Reuters Ltd.,
    312 F.3d 281 (7th Cir. 2002) ...............................52

In re G-I Holdings Inc.,
    420 B.R. 216 (D.N.J. 2009) .................................64

In re Gardner,
    913 F.2d 1515 (10th Cir. 1990) (per curiam) ................19

In re Geriatrics Nursing Home, Inc.,
    187 B.R. 128 (D.N.J. 1995) .................................16

In re Grumman Olson Indus., Inc.,
    467 B.R. 694 (S.D.N.Y. 2012) ...........................35, 41

In re Guild & Gallery Plus, Inc.,
    72 F.3d 1171 (3d Cir. 1996) ................................19

In re Harris,
    590 F.3d 730 (9th Cir. 2009) ...............................19

Hilton v. Braunskill,
    481 U.S. 770 (1987) ........................................64

Hohe v. Casey,
    868 F.2d 69 (3d Cir. 1989) .................................66

Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de
    Guinee,
    102 S. Ct. 2099 (1982) ......................................29

Instant Air Freight Co. v. C.F. Air Freight, Inc.,
    882 F.2d 797 (3d Cir. 1989) ................................65

In re James,
    940 F.2d 46 (3d Cir. 1991) .............................60, 61

Matter of Johns-Manville Corp.,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986) aff'd sub nom. In re
    Johns-Manville Corp., 78 B.R. 407 (S.D.N.Y. 1987) aff'd
    sub nom. Kane v. Johns-Manville Corp., 843 F.2d 636 (2d
    Cir. 1988) .................................................30

In re Johns-Manville Corp.,
    801 F.2d 60 (2d Cir. 1986) .................................30

Jones v. Caruso,
    569 F.3d 258 (6th Cir. 2009) ...............................70

Kalb v. Feuerstein,
    308 U.S. 433 (1940) ........................................61

Katchen v. Landy,
    382 U.S. 323 (1966) ........................................55

Kontrick v. Ryan, 540 U.S. 443(2004)...........................53

In re Lacy,
    183 B.R. 890 (Bankr. D. Colo. 1995) ........................28

Langenkamp v. Culp,
    498 U.S. 42 (1990) .........................................55

Lefever v. K.P. Hovnanian Enterprises, Inc.,
    160 N.J. 307 (1999) ....................................36, 41

In re Lisanti Foods, Inc.,
    329 B.R. 491 (D.N.J. 2005) aff'd sub nom. In re Lisanti
    Foods Inc., 241 F. App'x 1 (3d Cir. 2007) ..............15, 16

In re Lower Bucks Hosp.,
    488 B.R. 303 (E.D. Pa. 2013) ...............................16

In re Mansaray-Ruffin,
    530 F.3d 230 (3d Cir. 2008) ................................51

In re Marcus Hook Dev. Park, Inc.,
    943 F.2d 261 (3d Cir. 1991) ..................................22

In re Marvel Entm't Grp., Inc.,
    140 F.3d 463 (3d Cir. 1998) .............................16, 42

In the Matter of Met-L-Wood,
    861 F.2d 1012 (7th Cir. 1988) .....................46, 47, 49

In re Midway Games Inc.,
    446 B.R. 148 (Bankr. D. Del. 2011) .....................25, 26

In re Miloszar,
    238 B.R. 266 (D.N.J. 1999) ..................................61

Mullane v. Central Hanover Bank & Trust Co.,
    339 U.S. 306 (1950) .........................................41

Murray v. Silberstein,
    882 F.2d 61 (3d Cir. 1989) ..................................65

Nat'l Collegiate Athletic Ass'n v. Christie,
    926 F. Supp. 2d 551 (D.N.J. 2013) aff'd sub nom. Nat'l
    Collegiate Athletic Ass'n v. Governor of New Jersey,
    730 F.3d 208 (3d Cir. 2013) .................................66

Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,
    458 U.S. 50 (1982) ....................................5, 17, 23

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck
    Consumer Pharms. Co.,
    290 F.3d 578 (3d Cir. 2002) .............................65, 68

In re Optical Technologies, Inc.,
    425 F.3d 1294 (11th Cir. 2005) .............................16

Pacor, Inc. v. Higgins,
    743 F.2d 984 (3d Cir. 1984) .............................21, 24

In re Pagano Dev. Co., Inc.,
    Case No. 11-4448, 2011 WL 5082203 (D.N.J. Oct. 25,
    2011) .......................................................64

Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.,
    143 F.3d 800 (3d Cir. 1998) .................................68

Pennzoil v. Texaco, Inc.,
    481 U.S. 1 (1987) ...........................................58

Planker v. Ricci,
    CIV. 07-2679, 2010 WL 4447281 (D.N.J. Nov. 1, 2010) .........66

Precision Indus., Inc. v. Qualitech Steel SBQ, LLC,
    327 F.3d 537 (7th Cir. 2003) ................................54

Quackenbush v. Allstate Ins. Co.,
    517 U.S. 706 (1996) ........................................57

In re Resorts Int'l, Inc.,
    372 F.3d 154 (3d Cir. 2004) ............................*passim*

Roe v. State of Ala. By & Through Evans,
    43 F.3d 574 (11th Cir. 1995) ...............................67

Rose v. Lundy,
    455 U.S. 509 (1982) ........................................57

Ruhrgas AG v. Marathon Oil Co.,
    526 U.S. 574 (1999) ........................................57

In re SB Properties, Inc.,
    185 B.R. 206 (Bankr. E.D. Pa. 1995) ........................62

Schweitzer v. Consolidated Rail Corp.,
    65 B.R. 794 (E.D. Pa. 1986) ................................37

Scimeca v. Umanoff,
    169 B.R. 536 (D.N.J. 1993), aff'd, 30 F.3d 1488 (3d
    Cir.1994) ..................................................16

In re Semcrude, L.P.,
    728 F.3d 314 (3d Cir. 2013) ................................51

In re Shenango Grp. Inc.,
    501 F.3d 338 (3d Cir. 2007) ............................15, 25

In re Skyline Woods Country Club,
    636 F.3d 467 (8th Cir. 2011) ...........................56, 61

St. John v. Affinia Grp., Inc.,
    Case No. 09-2501 (WJM), 2009 WL 1586503 (D.N.J. June 8,
    2009) ..................................................62, 64

In re St. Johnsbury Trucking Co., Inc.,
    185 B.R. 687 (S.D.N.Y. 1995) ...............................67

Steel Co. v. Cit. for a Better Env't,
    523 U.S. 83 (1998) .........................................31

Stern v. Marshall,
  131 S. Ct. 2594 (2011), reh'g denied, 132 S. Ct. 56
  (U.S. 2011) ......................................5, 17, 19, 37

In re Tougher Indus., Inc.,
  06-12960, 2013 WL 1276501 (Bankr. N.D.N.Y. Mar. 27,
  2013) ...............................................34

In re Trans World Airlines, Inc.,
  278 B.R. 42 (Bankr. D. Del. 2002) ...................20, 21, 28

In re Trans World Airlines, Inc.,
  322 F.3d 283 (3d Cir. 2003) .................................33

In re Tribune Co.,
  477 B.R. 465 (Bankr. D. Del. 2012) .........................67

In re USA United Fleet Inc.,
  496 B.R. 79 (E.D.N.Y. Bankr. 2013) .........................33

Valley Historic Ltd. Partnership v. Bank of New York,
  486 F.3d 831 (3d Cir. 2007) ................................25

In re W.R. Grace & Co.,
  591 F.3d 164 (3d Cir. 2009) .......................21, 22, 29

In re West Coast Video Enterprises, Inc.,
  174 B.R. 906 (Bankr. E.D. Pa. 1994) .......................53

In re White Motor Credit Corp.,
  75 B.R. 944 (Bankr. N.D. Ohio 1987) .......................37

Wright v. Corning,
  679 F.3d 101 (3d Cir. 2012) cert. denied, 133 S. Ct.
  1239 (U.S. 2013) ..........................................46

In re Xonics,
  813 F.2d 127 (7th Cir. 1987) ..............................48

In re Zenith Electronics Corp.,
  241 B.R. 92 (Bankr. D.Del. 1999) ..........................53

Zerand-Bernal Grp., Inc. v. Cox,
  23 F.3d 159 (7th Cir. 1994) ...........................*passim*

Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.,
  50 F.3d 253 (3d Cir. 1995) ................................16

**Rules and Statutes**

11 U.S.C. 363(f)...........................................*passim*

11 U.S.C. § 105(a).....................................28, 30

28 U.S.C. § 157............................................*passim*

28 U.S.C. §§ 1334......................................17, 29

Bankruptcy Rule 3016(c)......................................50

Bankruptcy Rule 7001(7)...................................3, 51

Bankruptcy Rule 8005.........................................63

<u>N.J.S.A.</u> 56:9-3..............................................5

**Other Authorities**

11A Charles Alan Wright, Arthur R. Miller & Mary Kay
   Kane, Federal Practice and Procedure § 2948.1 (2d
   ed.1995) ...................................................66

George W. Kuney, <u>Misinterpreting Bankruptcy Code Section
   363(f) and Undermining the Chapter 11 Process</u>, 76 Am.
   Bankr. L.J. 235 (2002) ...................................34

## **PRELIMINARY STATEMENT**

This appeal seeks reversal of the Bankruptcy Court's December 3, 2013 Order requiring Prime Healthcare Services, Inc. ("Prime Healthcare") to dismiss its state court action against Hudson Hospital Holdco, LLC[1] and Vivek Garipalli (collectively "Hudson").

The Bankruptcy Court's December 3, 2013 Order is unprecedented and unconstitutional. Not only did the Bankruptcy Court order the dismissal of a pending state court action, but it did so before the District Court had an opportunity to decide Prime Healthcare's pending motion to withdraw the reference.[2] Respectfully, the Bankruptcy Court erroneously misstated the law when it repeatedly held that it had jurisdiction to enjoin Prime Healthcare's non-derivative claims against Hudson; indeed, "bankruptcy jurisdiction is limited, as is the explicit grant of authority to bankruptcy courts." In re Cont'l Airlines, 203 F.3d 203, 214 fn.12 (3d Cir. 2000). In contravention of these

---

[1] The Hudson entities named in this action are Hudson Hospital Propco, LLC, Hudson Hospital Opco, LLC, and Hudson Hospital Holdco, LLC.

[2] This appeal also seeks reversal of the Bankruptcy Court's December 20, 2013 Order denying Prime Healthcare's motion to stay enforcement of the December 3, 2013 Order pending appeal, as well as seeking this Court's determination granting Prime Healthcare's Motion to Withdraw the Reference, in that the Court below did not have jurisdiction to hear this matter. All appeals have been consolidated by Stipulation, pending formal Court approval.

principles and others from the Supreme Court and circuit courts, the Bankruptcy Court impermissibly extended its jurisdiction over Prime Healthcare's non-derivative common law claims against a non-debtor, and refused to stay Hudson's motion for an injunction while the District Court determined whether the reference to the Bankruptcy Court should be withdrawn.  This Court now has the opportunity to decide that which it should have had the opportunity to decide months ago under Prime Healthcare's motion to withdraw the reference -- that the Bankruptcy Court had no post-confirmation jurisdiction to enjoin Prime Healthcare's common law claims against Hudson in the first place.

Both Hudson and the Bankruptcy Court have conflated the claims at issue.  With due respect, the Bankruptcy Court's December 3, 2013 Order represents a fundamental misunderstanding of the claims at issue in this matter.  From a factual perspective, Prime Healthcare seeks damages from Hudson for Hudson's pre-bankruptcy conduct which tortiously interfered with its contract to purchase Christ Hospital.  These are quintessential non-derivative common law claims.  These claims do not invoke rights provided by the Bankruptcy Code, do not arise only in the context of a bankruptcy proceeding, and do not relate to the Christ Hospital bankruptcy proceedings (they predate the Christ Hospital bankruptcy proceedings by weeks).

See In re Resorts Int'l, Inc., 372 F.3d 154, 161-62 (3d Cir. 2004).

Moreover, Prime Healthcare's claims are in no way a "collateral attack" on the Christ Hospital Sale or Confirmation Orders. Prime Healthcare does not seek to interfere with the sale of Christ Hospital or the administration of the Christ Hospital bankruptcy estate. Hudson is, and will remain, the successful purchaser of Christ Hospital. Further, Prime Healthcare's common law claims against Hudson are not "interests" in Christ Hospital. Prime Healthcare's only interest is to pursue a damage claim against Hudson for Hudson's tortious interference with its contract to purchase Christ Hospital. The fact that Hudson later purchased Christ Hospital is irrelevant -- Prime Healthcare would still have a claim against Hudson for tortious interference if Hudson had not purchased Christ Hospital.

As a matter of constitutional law, the Bankruptcy Court's December 3, 2013 Order violated Prime Healthcare's due process rights by enjoining its common law claims against Hudson in Sale and Confirmation Orders without notice or an opportunity to be heard in the Christ Hospital bankruptcy proceedings[3]; indeed, the notion that these claims could be enjoined by a bankruptcy court

---

[3] Bankruptcy Rule 7001(7) requires an adversary proceeding to issue any injunction not provided for in the Plan. No adversary proceeding was held here.

that did not hear evidence, consider, or make any findings thereon is constitutionally erroneous. Similarly, the Bankruptcy Court's determination that Prime Healthcare's state court action against Hudson is a "collateral attack" on Orders entered in the Christ Hospital bankruptcy proceedings offends established principles of federal-state comity. With due respect, the only improper attack on an order in this case was that of the Court below when it superseded the Appellate Division and effectively reversed the well-reasoned August 2013 decision of the Superior Court, which found that Prime Healthcare's state court action was not a collateral attack on previous Orders entered in the Christ Hospital bankruptcy proceedings. The law of state-federal comity makes clear that the Bankruptcy Court should not have even heard this matter and rewarded Hudson's forum shopping.

The scale of the Bankruptcy Court's error is quite significant: it has effectively determined that United States bankruptcy courts possess near limitless jurisdiction, in contravention of Supreme Court and Third Circuit precedent, the United States Constitution, and federal-state comity. The error is compounded by the Bankruptcy Court's position that Prime Healthcare dismiss its state court action -- first with and then without prejudice -- within days. Prime Healthcare's common law claims against Hudson are "made of 'the stuff of the traditional

actions at common law'" and "the responsibility for deciding [actions at common law] rests with Article III judges in Article III courts." Stern v. Marshall, 131 S. Ct. 2594, 2609 (2011), reh'g denied, 132 S. Ct. 56 (U.S. 2011) (citing Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 90 (1982)).

For these and the reasons stated herein, Prime Healthcare respectfully requests that the Bankruptcy Court's December 3, 2013 Order, and December 20, 2013 Order be reversed on appeal as an abuse of discretion.

## STATEMENT OF FACTS

On March 13, 2013, Prime Healthcare filed a Complaint in the Law Division, Passaic County ("Superior Court Complaint"), alleging five claims against Hudson. The complaint alleged: (1) conspiracy in violation of the New Jersey Anti-Trust Act, N.J.S.A. 56:9-3; (2) monopoly in violation of that act; (3) tortious interference with contractual relations; (4) tortious interference with prospective economic gain; and (5) unfair competition. See New Jersey Superior Court Complaint and Jury Demand (Item[4] 4), ¶¶ 39-78. Prime Healthcare's claims are predicated on Hudson's continuing efforts to tortiously undermine and purchase for itself hospitals with which Prime

---

[4] "Item" refers to those items designated as the Record on Appeal by Prime Healthcare, filed with the District Court on December 24, 2013.

Healthcare already has signed asset purchase agreements.   Id. ¶ 2.   Among hospitals involved were St. Mary's Hospital in Passaic, New Jersey ("St. Mary's"), St. Michael's Medical Center in Newark, New Jersey ("Saint Michael's"), Landmark Medical Center in Woonsocket, Rhode Island ("Landmark"), as well as Christ Hospital in Jersey City, New Jersey ("Christ Hospital"). Id. ¶¶ 14-38.

Prime Healthcare is in the business of operating more than 20 acute-care hospitals in California, Nevada, Pennsylvania, Texas and Rhode Island, specializing in the purchase, revitalization and turnaround of financially struggling institutions.   Id. ¶ 9.   Prime Healthcare became interested in expanding into the New Jersey market and in August 2011 signed a Letter of Intent to purchase Christ Hospital, as part of which it advanced more than six million dollars between August 2011 and February 2012 to keep Christ Hospital operational until the conclusion of the purchase.   Id. ¶¶ 14-15.   Prime Healthcare entered into an asset purchase agreement ("APA") with Christ Hospital in December 2011; nevertheless, as reflected by its *modus operandi*, even after that contract was signed, Hudson continued to unsuccessfully offer to purchase the hospital's assets.   Id. ¶¶ 16-17.

During the pendency of the APA, Hudson successfully mounted a campaign to prevent and/or interfere with Prime Healthcare's

6

purchase of Christ Hospital and at the same time undermine Prime Healthcare's ability to enter the New Jersey market.  Id. ¶ 18. As a direct result of Hudson's actions, it became clear that Prime Healthcare's opportunity to purchase Christ Hospital had been unfairly and irreparably destroyed by the actions of Hudson, ultimately forcing Prime Healthcare to withdraw its offer to purchase Christ Hospital.  Id. ¶19.  Soon after Prime Healthcare withdrew its offer to purchase Christ Hospital on February 6, 2012, Christ Hospital, without a means of financial support, filed a bankruptcy petition under Chapter 11 of Title 11 of the U.S. Bankruptcy Code in U.S. Bankruptcy Court for the District of New Jersey ("Bankruptcy Court" or "Court below"), Action Number 12-12906 (MS).  The Bankruptcy Court ultimately held an auction, which pitted Hudson against another bidder, in which Hudson eventually was successful.  Although Prime Healthcare entered an appearance in the bankruptcy action for the purposes of receiving notices, it made no filings and took no positions in that court throughout the sale and Plan of Liquidation process.

There was no reference to Prime Healthcare or its claims during the sale proceedings, save a brief vague glancing reference as to the impact of the unexpected termination of the APA that thrust the hospital into bankruptcy.  At one point counsel for Christ Hospital responded to a question from the

court regarding the hospital's need to know that a bidder can "pull off" the purchase and continued running of the hospital, stating:

> Number two, we can answer your question very directly about what that means, but it's not me. We've had a lot of lawyers standing here making statements. We need some evidence, and we need a record. We can answer your question precisely about what we mean about pulling it off, about what we mean about healthcare in Hudson County, and about the board's view. And there's parties here who can take an opposing view, and we can look at that and we can discuss that. One of the problems, and Your Honor I think felt my frustration with those two letters in December and January, is we had a deal with somebody else that we thought was very good, and words thrown on a piece of paper led to a political firestorm without analysis, without proof, without financial advisors going through the things that really matter, without the clarity of the people on the ground dealing with the issues, with all due respect, as opposed to the political process, which is on a different level. So, we lost a very good and simple deal that would have never required us to seek assistance of this Court, and here we are, and the two parties who wrote those letters are the two parties who are here, and we're trying to pick the best one for the whole host of reasons.

See Mar. 23, 2012 Hearing Transcript (Item 17[5]), T84:8-85:4 (emphasis added).

The Bankruptcy Court entered the Sale Order on March 27, 2012. See March 27, 2012 Sale Order (Item 3). While the bankruptcy proceedings were pending, in or about October and November 2012, Prime Healthcare reached an agreement to acquire

---

[5] Item 17 was added to the Record on Appeal by stipulation of the parties dated February 14, 2014, having been inadvertently omitted from Prime Healthcare's December 24, 2013 submission.

Landmark with the Rhode Island court-appointed Special Master overseeing its receivership.   See New Jersey Superior Court Complaint and Jury Demand (Item 4), ¶ 21.   Before reaching this agreement, Hudson made its own unsuccessful attempts to purchase that hospital.   Id.   After an APA was reached between Landmark and Prime Healthcare, Hudson made an unsolicited bid to purchase Landmark, released untrue and misleading information concerning Prime Healthcare to the Rhode Island news media and others, and negotiated and signed a collective bargaining agreement with Landmark's unions in an apparent effort to encourage the Landmark unions to oppose Prime Healthcare's purchase of the hospital.   Id. ¶ 29.   Despite Hudson's efforts, the sale of Landmark to Prime Healthcare ultimately closed in December 2013.

At about the same time, Prime Healthcare also bid for the purchase of St. Mary's, for which Hudson also submitted a bid. Id. ¶ 21.   Garipalli, the majority stakeholder of Hudson, made clear Hudson's intentions to take over St. Mary's and to keep Prime Healthcare out of the New Jersey market by verbally threatening two top Prime Healthcare executives.   Id. ¶ 23. Garipalli declared that New Jersey "is my area" and promised that Prime Healthcare "will not buy any hospital in New Jersey." Id.   He also stated that he would use his political connections to make sure that Prime Healthcare would never receive final approval from state offices to purchase a hospital in New

Jersey.  Id. ¶ 24.  He also offered to abandon Hudson's bid for Landmark in exchange for withdrawal of Prime Heathcare's bid for St. Mary's.  Id. ¶ 25.  This was rejected.  Id. ¶ 26.  In December 2012, Prime Healthcare entered into a non-binding letter of intent to purchase Saint Michael's, and in February 2013 entered into an APA for Saint Michael's.  Id. ¶ 33. Despite these agreements, Hudson actively interfered with Prime Healthcare's business opportunities by creating opposition to the purchase of St. Mary's and Saint Michael's and by continuing to offer to purchase St. Mary's.  Id. ¶ 34.

Hudson and another defendant, William A. McDonald, moved to dismiss the Superior Court Complaint in its entirety based upon a variety of legal theories, including that some or all of the claims were barred by the doctrines of *res judicata* and collateral estoppel based on rulings reached by the Bankruptcy Court in the Christ Hospital bankruptcy proceedings.  In a written decision dated August 22, 2013, Superior Court Judge Phillip H. Mizzone, Jr. granted in part and denied in part defendants' motion.  The Court granted -- without prejudice -- defendants' motion to dismiss the antitrust claims for inadequate specificity and to dismiss the interference claims involving St. Mary's and Saint Michael's because these contracts were still operative.  However, the Court denied defendants' motion to dismiss the third cause of action for tortious

interference with contract, the fourth cause of action for tortious interference with prospective economic advantage, and the fifth cause of action for unfair competition, all with regard to Prime Healthcare's attempted purchase of Christ Hospital, holding:

> Allowing this litigation to proceed with respect to Christ Hospital would not constitute a collateral attack on the previous orders from the Bankruptcy Court or Superior Court. Those proceedings relate to the sale of Christ Hospital after it went into bankruptcy. Plaintiff's antitrust claims pertain to Defendants' actions that took place prior to, and allegedly during, this transaction. A finding by this Court that Defendants engaged in illegal activity with respect to Christ Hospital would not necessarily conflict with the Bankruptcy Court findings which said that the bidding and process done in Bankruptcy Court was fair and competitive.

See August 22, 2013 Order and Opinion of the Hon. Philip H. Mizzone, Jr., J.S.C. (Item 9), pg. 2.

Hudson wasted no time in filing a motion in the New Jersey Superior Court, Appellate Division ("Appellate Division") for leave to appeal the Superior Court's Order denying in part its motion to dismiss. In its motion, Hudson argued again that Prime Healthcare's state law claims are barred by the Orders entered in the bankruptcy proceedings, as well as by the doctrines of *res judicata* and collateral estoppel. The motion was ultimately granted and, as this Court is aware, the appeal to the Appellate Division has been stayed pending this Court's determination of the consolidated appeals.

11

On September 30, 2013, even before the Appellate Division had ruled on the motion, Hudson essentially appealed again, this time to the Bankruptcy Court, seeking to enjoin Prime Healthcare's state court action and making nearly identical arguments to those rejected by the Superior Court and advanced in its interlocutory appeal. In opposition and by way of cross-motion, on October 15, 2013, Prime Healthcare sought to withdraw the reference to the Bankruptcy Court, a motion that is still pending before this Court. Prime Healthcare argued that its state court action against Hudson relating to Hudson's pre-bankruptcy conduct is not encompassed by the Bankruptcy Court's prior orders in that case, and that the Bankruptcy Court has no valid jurisdiction to enjoin the state claims. Prime Healthcare also filed a motion to stay determination of Hudson's motion for an injunction.

The Bankruptcy Court denied Prime Healthcare's motion to stay Hudson's motion pending determination of the motion to withdraw the reference by this Court and held oral argument.[6] On December 3, 2013, the Bankruptcy Court issued an Order and opinion granting Hudson's motion to enjoin the state court action, finding that Prime Healthcare's common law claims are "directly attributable to the transfer of assets of Christ

---

[6] During oral argument on October 22, 2013, counsel for Prime Healthcare reserved its rights with regard to the pending motion to withdraw the reference.

Hospital and their use by Hudson" such as to qualify as "interests" in Christ Hospital property that may be transferred free and clear pursuant to 11 U.S.C. 363(f).  See December 3, 2013 Opinion of the Hon. Morris Stern, U.S.B.J. (Item 1), pgs. 15-21.  The Bankruptcy Court also found that it had jurisdiction to enjoin Prime Healthcare's common law claims because bankruptcy courts possess "in rem" jurisdiction to determine claims that anyone has in bankruptcy estate property, and because confirmations of plans and orders approving the sale of property (and the enforcement thereof) are "core" proceedings. Id., pgs. 30-35.

The Bankruptcy Court's Order required Prime Healthcare to "initiate such steps as are necessary to seek the dismissal with prejudice in the State Court action of the economic tort claims" within 15 days.  See December 3, 2013 Order of the Hon. Morris Stern, U.S.B.J. (Item 1), pg. 4 (emphasis added).  On December 10, 2013, Prime Healthcare filed a notice of appeal of the Bankruptcy Court's December 3, 2013 Order and simultaneously filed a motion with that court to stay the Order pending appeal. By Order dated December 20, 2013, the Bankruptcy Court denied Prime Healthcare's motion to stay, but modified its December 3, 2013 Order to require Prime Healthcare to seek dismissal of the Superior Court Complaint without prejudice within ten (10) days from entry of the Order.

On December 27, 2013, Prime Healthcare filed a notice of appeal of the Bankruptcy Court's December 20, 2013 Order and simultaneously filed an emergent motion to stay enforcement of the Bankruptcy Court's December 3 and December 20, 2013 Orders pending appeal.[7]

## LEGAL ARGUMENT

### I.   STANDARD OF REVIEW

Before this Court can review the Bankruptcy Court's December 3, 2013 Order, it must first determine whether the Bankruptcy Court even had jurisdiction to enter the Order in the first place.   Indeed, Prime Healthcare filed a motion to withdraw the reference to the Bankruptcy Court in order to have this Court -- a Court with jurisdiction over non-derivative common law claims -- determine whether the Bankruptcy Court may constitutionally provide the relief sought by Hudson. Respectfully, the Bankruptcy Court should not have decided these significant constitutional issues in the first instance.   Now, this Court has the opportunity to hear the pending motion to withdraw the reference and, consequently, will have the power to essentially render the Bankruptcy Court's December 3, 2013 Order

---

[7] The parties have since stipulated to stay enforcement of the Bankruptcy Court's Orders, contingent on the continued stay of the Superior Court and Appellate Division proceedings (the Appellate Division stayed the matter for ninety days on January 17, 2014 (subject to renewal) and a pending consent Order requires a renewal of the request to the Appellate Division for an extension of the stay.

null and void.  If this Court chooses to review the Bankruptcy Court's December 3, 2013 Order on appeal, rather than Prime Healthcare's motion to withdrawal the reference, the result is essentially the same: the Bankruptcy Court had no jurisdiction to enjoin Prime Healthcare's non-derivative common law claims against Hudson, a non-debtor, except that it completely nullifies the decision below.

A bankruptcy court's interpretation of its own order is subject to review for an abuse of discretion.  In re Shenango Grp. Inc., 501 F.3d 338, 346 (3d Cir. 2007).  However, "[t]his deferential standard should not apply, of course, if the issue being reviewed presents only a question of law."  Id.  Rather, the standard of review to be applied by a district court reviewing a ruling of a bankruptcy court is "determined by the nature of the issues presented on appeal."  In re Lisanti Foods, Inc., 329 B.R. 491, 496 (D.N.J. 2005) aff'd sub nom. In re Lisanti Foods Inc., 241 F. App'x 1 (3d Cir. 2007).  See also Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co., 974 F.2d 775, 779-80 (7th Cir. 1992) ("in applying the abuse of discretion standard, we do not give equal deference to every aspect of a court's decision").

Factual findings are reviewed for clear error.  Lisanti Foods, 329 B.R. at 496 (internal citations and quotations omitted).  Legal conclusions are subject to de novo or plenary

15

review.  Id.  "Under the *de novo* standard, the district court makes a judgment independent of the bankruptcy court, without deference to that court's analysis and conclusions of law." In re Lower Bucks Hosp., 488 B.R. 303, 311-12 (E.D. Pa. 2013) (citing Scimeca v. Umanoff*,* 169 B.R. 536, 541–42 (D.N.J. 1993), aff'd*,* 30 F.3d 1488 (3d Cir.1994)).  "The rationale for deferring to a court's interpretation of its own order does not extend to its analysis of broad legal principles[.]"  In re Optical Technologies, Inc., 425 F.3d 1294, 1303 (11th Cir. 2005).

"Abuse of discretion can be found when a 'judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous.'"  In re Geriatrics Nursing Home, Inc., 187 B.R. 128, 131 (D.N.J. 1995) (citing Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*,* 50 F.3d 253, 257 (3d Cir. 1995)).  "An abuse of discretion exists where the district court's decision rests upon...an errant conclusion of law[.]" In re Marvel Entm't Grp., Inc., 140 F.3d 463, 470 (3d Cir. 1998) (citing ACLU v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1476 (3d Cir. 1996)).

The Bankruptcy Court's erroneous legal conclusions are entitled to no deference by this Court.  Moreover, the Bankruptcy Court's erroneous findings of fact and failure to

16

apply the proper legal standard is an abuse of discretion, and its December 3, 2013 Order should be reversed on appeal.

## II.  THE BANKRUPTCY COURT HAD NO JURISDICTION TO ENJOIN PRIME HEALTHCARE'S COMMON LAW CLAIMS AGAINST HUDSON

It is well-settled that "bankruptcy jurisdiction is limited, as is the explicit grant of authority to bankruptcy courts." Cont'l Airlines, supra, 203 F.3d at 214 fn.12. The Supreme Court and Third Circuit have long recognized the limitations on bankruptcy court jurisdiction, finding that vesting the "essential attributes of the judicial power" in non-Article III courts is unconstitutional, see Marathon, supra, 458 U.S. at 87, and that the responsibility for deciding "traditional actions at common law" belongs to Article III courts, see Stern, supra, 131 S. Ct. at 2609, 2618 (finding that "a state tort action that exists without regard to any bankruptcy proceeding" must be adjudicated by an Article III court.). See also Resorts Int'l, 372 F.3d 154.

The Bankruptcy Court's exercise of jurisdiction to enjoin Prime Healthcare's common law claims is improper. Bankruptcy courts may not "write their own jurisdictional ticket," id. at 161, but rather, must derive their jurisdiction from 28 U.S.C. §§ 1334 or 157; retention of jurisdiction provisions are "fundamentally irrelevant" absent jurisdiction under these sections, id.  Likewise, bankruptcy court power to enter

17

injunctions must be exercised within the boundaries of sections 1334 and 157; this power does not permit bankruptcy courts to "create substantive rights that would otherwise be unavailable under the Code." See In re Combustion Eng'g, Inc., 391 F.3d 190, 236 (3d Cir. 2004).

As discussed below, the Bankruptcy Court abused its discretion by conferring upon itself jurisdiction over Prime Healthcare's common law claims against Hudson -- claims which exist separate from, and outside of, the Christ Hospital bankruptcy -- and claims which neither affect nor interfere with Christ Hospital assets or the Christ Hospital bankruptcy estate.

**A.  Sections 1334 and 157 Do Not Confer Jurisdiction Over Prime Healthcare's Common Law Claims Against Hudson.**

By statute, bankruptcy courts may "hear and determine all cases under title 11 [of the Bankruptcy Code] and all core proceedings arising under title 11, or arising in a case under title 11[.]" 28 U.S.C. § 157(b)(1). Bankruptcy courts may also "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," but must submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). "Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are

referred to as 'non-core' proceedings." Resorts Int'l, supra, 372 F.3d at 162.

### 1. Prime Healthcare's common law claims against Hudson are not "core."

The Third Circuit has held that a "core proceeding" is one that "'invokes a substantive right provided by title 11' or one that 'by its nature, could arise only in the context of a bankruptcy case.'" Id. at 162-63 (quoting In re Guild & Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d Cir. 1996)). See also In re Gardner, 913 F.2d 1515, 1518 (10th Cir. 1990) (per curiam) ("Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings.").

Prime Healthcare's common law claims against Hudson for tortious interference and unfair competition neither invoke any substantive right under the Bankruptcy Code nor do they arise in the context of the Christ Hospital bankruptcy. See Stern, supra, 131 S.Ct. at 2614-15 (finding that the petitioner's claim for tortious interference is "one under state common law between two private parties" that does not "depend on the will of Congress," "flow from a federal statutory scheme," or "depend[] upon adjudication of a claim created by federal law," and is not "limited to a particularized area of the law") (internal citations omitted). See also In re Harris, 590 F.3d 730, 737

19

(9th Cir. 2009) (finding that breach of contract claim is not core); In re Trans World Airlines, Inc., 278 B.R. 42, 49 (Bankr. D. Del. 2002) (finding that tortious interference claim is not core).   To the contrary, Prime Healthcare's claims against Hudson were ripe prior to the Christ Hospital bankruptcy because at that point in time Hudson had engaged in tortious conduct which unlawfully interfered with Prime Healthcare's attempts to purchase Christ Hospital.   The fact that bankruptcy proceedings commenced thereafter is of no consequence; Prime Healthcare had a claim for tortious interference against Hudson exclusive of the bankruptcy.

This matter is analogous to Trans World Airlines, supra, 278 B.R. 42, where the Delaware Bankruptcy Court considered whether it had jurisdiction over a dispute regarding alleged interference with a pre-bankruptcy contract.   Id. at 42.   The Trans World Airlines Court found that the dispute was "non-core," stating:

> Because the [third-party's claims against the Chapter 11 purchaser for tortious interference with contract] sound in tort and have been asserted against [the Chapter 11 purchaser] for its pre-petition role in allegedly inducing [the debtor] to file for bankruptcy and reject the [pre-petition contract], it is clear that the [third-party's claims] derive from [the Chapter 11 purchaser's] pre-petition conduct…[a]s such, a ruling on this action depends on an interpretation of state law and not, as [the debtor] contends, on an interpretation of [the debtor's] rights under the Bankruptcy Code.

Id. at 49.

Similarly, Prime Healthcare's claims against Hudson "sound in tort" and involve non-derivative pre-petition conduct -- any ruling thereon depends on the interpretation of common law, not the Bankruptcy Code.  Accordingly, Prime Healthcare's common law claims against Hudson are not core as a matter of law.

> **2.   Prime Healthcare's common law claims against Hudson are not "related-to" the Christ Hospital bankruptcy.**

In Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), the Third Circuit articulated the relevant standard for determining "related-to" jurisdiction, stating:

> An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

(Emphasis added).

Though broadly worded, related-to jurisdiction "'is not without limitation.'"  In re W.R. Grace & Co., 591 F.3d 164, 171 (3d Cir. 2009) (quoting Combustion Eng'g, supra, 391 F.3d at 228).  "[T]he critical component of the Pacor test is that 'bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor.'"  Resorts Int'l, supra, 372 F.3d at 164 (citing Celotex Corp. v. Edwards, 514 U.S. 300, 308 fn.6

(1995)).[8]  Further, a bankruptcy court's power to adjudicate non-core proceedings is limited: "[i]t may only hear the matter and submit proposed findings of fact and conclusions of law." In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 266-67 (3d Cir. 1991) (citations omitted).

Prime Healthcare seeks only to assert common law claims against Hudson and to recover damages from Hudson.  Neither Christ Hospital nor the Christ Hospital bankruptcy estate will be affected by Prime Healthcare's state court action against Hudson.  Rather, an entirely separate action would be necessary for any liability incurred by Hudson to impact Christ Hospital or the Christ Hospital bankruptcy estate.  In W.R. Grace, supra, 591 F.3d at 172-73, the Third Circuit explained:

> This is precisely the situation in which we have found that related-to jurisdiction does not exist . . .[i]ndeed, we have stated and restated that, in order for a bankruptcy court to have related-to jurisdiction to enjoin a lawsuit, that lawsuit must affect the bankruptcy without the intervention of yet another lawsuit." (Citations omitted).  Further, even in scenarios where the debtor may ultimately be liable by way of indemnification or contribution, the Third Circuit has found that the potential for such liability does not confer jurisdiction on the bankruptcy court because potential indemnification and

---

[8]  Crucially, the bankruptcy estate ceases to exist once the bankruptcy court confirms a Plan. See Resorts Int'l, supra, 372 F.3d at 157 ("Because the Bankruptcy Court confirmed the Reorganization Plan, the debtor's estate no longer exists."). Here, the Bankruptcy Court confirmed the Joint Plan of Orderly Liquidation on June 4, 2013. Accordingly, the Christ Hospital bankruptcy estate no longer exists and Prime Healthcare's state court action can have no conceivable effect thereon.

> contribution claims "would require the intervention of
> another lawsuit to affect the bankruptcy estate, and
> thus cannot provide a basis for 'related to'
> jurisdiction."

(Internal citation omitted).

This matter is similar to Copelin v. Spirco, Inc., 182 F.3d 174, 176 (3d Cir. 1999), wherein the plaintiff filed suit in state court against his former employer, Spirco, and its parent company, Innovo, for unpaid compensation. Judgment was entered for Copelin against Innovo only. Id. at 177. During the pendency of the state court action, Spirco filed for Chapter 11 bankruptcy protection and the bankruptcy judge ultimately approved a plan of reorganization wherein Spirco would merge with Innovo. Id. Innovo then moved before the bankruptcy court to enjoin Copelin from collecting the state court judgment. Id. at 178. The district court concluded Copelin could not be enjoined because Copelin's claims against Innovo did not fall within the terms of either the debtor's reorganization plan or the Bankruptcy Court's order. Id. at 183. On appeal, the Third Circuit affirmed, stating:

> At issue here is whether Copelin has the right to
> collect his judgment from Innovo, a non-debtor who
> became involved in a bankruptcy court proceeding
> through the confirmation of an Amended Plan. This, we
> conclude, is a non-core proceeding. Indeed, it would
> be inconsistent with Northern Pipeline to require
> Copelin to have his rights determined by a non-Article
> III court simply because Innovo invoked the protection
> of the bankruptcy court through a bankruptcy court
> procedure. It is clear from the record that Copelin

23

sued and won a state court judgment against Innovo, not Spirco. Innovo remained a party to the action after Copelin filed a notice of non-suit against Spirco because Innovo was originally a party to the Employment Agreement. Additionally, by the very terms of the Reorganization Plan, Innovo is not the debtor. Copelin's judgment resulted from a garden variety contract claim [against Innovo,] and is not against the bankrupt estate.

Id. at 180-81 (internal citations and quotations omitted).

Similar to Innovo's involvement in the Spirco bankruptcy, Hudson is a non-debtor who became involved in the Christ Hospital bankruptcy proceedings as the successful bidder.   Just as the Spirco bankruptcy proceedings could not act to enjoin Copelin from collecting his state court judgment, the Christ Hospital bankruptcy proceedings cannot act to enjoin Prime Healthcare's state court action.   At best, Prime Healthcare's state court action shares a limited factual background with the Christ Hospital bankruptcy: Hudson was the successful bidder for one of many properties that Prime Healthcare had been interested in purchasing.   This single fact, however, is insufficient to confer related-to jurisdiction.

"[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of [bankruptcy jurisdiction]." Pacor, supra, 743 F.2d at 994.   See also In re Exide Technologies, 544 F.3d 196, 220 (3d Cir. 2008) (specifically rejecting argument "that non-core claims against

24

non-debtors are rendered core because of close business relationships between the debtor and non-debtors or 'intertwinement' with a claim against a debtor..." and would stretch core jurisdiction so far as to "present serious constitutional questions.").

**B.    Bankruptcy Court Jurisdiction Is Limited Post-Confirmation.**

The Bankruptcy Court's jurisdiction is even more limited post-confirmation. See Shenango, supra, 501 F.3d at 343 ("related to jurisdiction is limited and . . . does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case") (internal citations and quotations omitted).  For jurisdiction to exist at the post-confirmation stage, "the claim must affect an integral aspect of the bankruptcy process -- there must be a close nexus to the bankruptcy plan or proceeding  . . . matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." Resorts Int'l, supra, 372 F.3d at 167. See also Valley Historic Ltd. Partnership v. Bank of New York, 486 F.3d 831, 836-37 (3d Cir. 2007); In re Federal Mogul Global Inc., 684 F.3d 355, 373 fn.28 (3d Cir. 2012) (discussing cases that have found the bankruptcy court's jurisdiction is limited post-confirmation).  For example, in In re Midway Games Inc.,

446 B.R. 148 (Bankr. D. Del. 2011), the debtor moved for an order transferring the relevant assets "free and clear of all interests and rights" of the debtor to a purchaser. Thereafter, plaintiff filed a complaint asserting various intellectual property rights in the transferred assets and objected to the requested sale order on the grounds that it should provide for transfer of the assets subject to its claims. The bankruptcy court thereafter entered the order with the provision that the assets be transferred subject to plaintiff's claims. Post-confirmation, the plaintiff moved to substitute the purchaser for the debtor in adversary proceedings relating to its intellectual property claims. Id. at 149-150. The court noted that generally, there is a "close nexus" in the post-confirmation context where interpretation and enforcement of a plan are required. Id. at 152. However, the court also found that although the plaintiff was nominally requesting an interpretation of the sale order, the relief that plaintiff sought with respect to its intellectual property claims "could have no conceivable effect on the bankruptcy estate" and that it therefore lacked even "related-to" jurisdiction. Id. at 153 (citing In re Allegheny Health Educ. & Research Found., 383 F.3d 169 (3d Cir. 2004)).

The Christ Hospital Confirmation Order was entered in June of 2013, approving the Joint Plan of Orderly Liquidation. For

26

the Bankruptcy Court to exercise jurisdiction over Prime
Healthcare's common law claims against Hudson more than six
months later, such claims would have to integrally affect the
Plan; they cannot and do not because Prime Healthcare does not
seek to undo, modify, affect, or interfere with the handling and
administration of the Christ Hospital bankruptcy estate.    See
Zerand-Bernal Grp., Inc. v. Cox, 23 F.3d 159, 161 (7th Cir.
1994) (finding that a claim "neither by nor against the debtor"
filed after the debtor's assets were transferred to the
purchaser "cannot possibly affect" distribution of the debtor's
assets).   Again, the Christ Hospital bankruptcy estate no longer
even exists.

   **C.   The Bankruptcy Court Erroneously Interpreted the Scope
        of Bankruptcy Court Jurisdiction.**

   Rejecting Prime Healthcare's legal and factual arguments
that it lacked jurisdiction to enjoin its common law claims, the
Bankruptcy Court instead referred to Prime Healthcare's argument
as a "blunderbuss of contentions."   See December 3, 2013 Opinion
of the Hon. Morris Stern, U.S.B.J. (item 1), pg. 30.   The
Bankruptcy Court then narrowly analyzed its jurisdictional
powers, concluding:

> Property held *in custodial legis* by the courts has
> traditionally (and logically) been the subject of *in
> rem* oversight.
> . . .
> [T]his case's Sale Approval Order and the Confirmation
> Order are "core," . . . Enforcement motions relating

27

to such orders are likewise "core" and squarely within
this court's jurisdiction to hear and determine.
. . .
[O]nce [Hudson] became the successful auction bidder,
the asset transfer, the assets and their use by
[Hudson] garnered protections under the Sale Approval
Order *which are within the jurisdiction of this court
to provide and which are enforceable in bankruptcy
against Prime Healthcare.*

Id., pgs. 30-32.

Respectfully, the Bankruptcy Court's positions are
fundamental errors of law.

### 1.   Section 157 does not confer substantive rights otherwise unavailable under the Bankruptcy Code.

"A proceeding is not 'core' simply because it 'arguably
fits within the literal wording' of one of the listed
proceedings under § 157(b)(2)." Trans World Airlines, supra,
278 B.R. at 48 (citing In re Lacy, 183 B.R. 890, 893 (Bankr. D.
Colo. 1995)). While, pursuant to statute, "confirmations of
plans" and "orders approving the sale of property..." are "core"
proceedings that "arise under" section 11, see 28 U.S.C. §
157(b)(2)(L) and (N), the right to issue such orders does NOT
confer substantive rights on bankruptcy courts above and beyond
their jurisdictional limits. See Combustion Eng'g, supra, 391
F.3d at 236 (holding that bankruptcy court power under 11 U.S.C.
§ 105(a) to "issue any order, process, or judgment that is
necessary or appropriate to carry out the provisions of this
title . . . does not give the court the power to create

28

substantive rights that would otherwise be unavailable under the Code"). A bankruptcy court's jurisdiction to enjoin a separate proceeding "must be based on the 'arising under,' 'arising in,' or 'related to' language of §§ 1334(b) and 157(a)." Celotex, supra, 514 U.S. at 307. Absent jurisdiction pursuant to sections 1334 or 157, retention of jurisdiction provisions contained in a bankruptcy court's orders are "fundamentally irrelevant." Resorts Int'l, supra, 372 F.3d at 161 ("[N]either the bankruptcy court nor the parties can write their own jurisdictional ticket."); Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 102 S. Ct. 2099, 2104 (1982) (noting "the consent of the parties is irrelevant" because "no action of the parties can confer subject-matter jurisdiction upon a federal court.") (citations omitted).

That the Bankruptcy Court entered Sale and Confirmation Orders containing injunctive language is immaterial; the Bankruptcy Court had no jurisdiction in the first place under the arising under, arising in, or related to language of sections 1334 and 157 to enjoin Prime Healthcare's common law claims against Hudson. See Cont'l Airlines, supra, 203 F.3d 203. The Bankruptcy Court "cannot create...jurisdiction by simply stating it has jurisdiction in a confirmation or other order." Resorts Int'l, supra, 372 F.3d at 161. As the Third Circuit explained in W.R. Grace, 591 F.3d at 174:

29

> Grace and Montana argue that the Bankruptcy Court does not need related-to jurisdiction over the Montana Actions in order to enjoin them, because the Court's jurisdiction over the adversary proceeding in Grace's Chapter 11 case is sufficient to provide it with a basis for expanding the § 105(a) injunction . . .If we were to accept Grace and Montana's position, however, a bankruptcy court would have power to enjoin any action, no matter how unrelated to the underlying bankruptcy it may be, so long as the injunction motion was filed in the adversary proceeding.  That notion stands in stark contrast to the basic premise that "federal courts are courts of limited jurisdiction; they exercise only the authority conferred on them by Art. III and by congressional enactments pursuant thereto.". . .The existence of a bankruptcy proceeding itself has never been and cannot be an all-purpose grant of jurisdiction.

(Emphasis added.)

Thus the Bankruptcy Court's decision represents a fundamental misapplication of the purpose of section 105 injunctions; section 105 "allows a bankruptcy court to enjoin proceedings in other courts to ensure the efficient administration of an estate," see Matter of Johns-Manville Corp., 68 B.R. 618, 625 (Bankr. S.D.N.Y. 1986) aff'd sub nom. In re Johns-Manville Corp., 78 B.R. 407 (S.D.N.Y. 1987) aff'd sub nom. Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988), not to enjoin proceedings with a limited factual relationship to the bankruptcy proceedings and which in no way effect the administration of the bankruptcy estate.  See also In re Johns-Manville Corp., 801 F.2d 60, 64 (2d Cir. 1986) ("In our view if the Bankruptcy Court may ever use its equitable powers under §

30

105(a) to enjoin actions pursued in other courts as 'concerning the administration of the estate' under § 157(b)(2)(A), it may exercise that power where there is a basis for concluding that rehabilitation, the very purpose for the bankruptcy proceedings, might be undone by the other action.").

### 2. The Bankruptcy Court failed to make jurisdictional findings.

Before a bankruptcy court may enter an injunction, it is required to make explicit jurisdictional findings as to whether it may constitutionally do so. See Combustion Eng'g, supra, 391 F.3d at 237-38 ("Neither court here made explicit findings whether the [Section] 524(g) requirements were satisfied with respect to the channelling injunction as applied to the independent, non-derivative claims..."). "The existence of subject matter jurisdiction is determined before, not after, adjudication of the merits and depends on the nature, not the validity, of [the claim]." Allegheny, supra, 383 F.3d at 176 (citing Steel Co. v. Cit. for a Better Env't, 523 U.S. 83, 88-102 (1998)). See also Cont'l Airlines, supra, 203 F.3d at 214 fn.12 (noting "with some concern" that the bankruptcy court "never examined its jurisdiction to release and permanently enjoin Plaintiffs' claims against non-debtors.").

No such findings were made here, nor did the Bankruptcy Court cite any authority to support its holding that it had the

31

power to enjoin Prime Healthcare's non-derivative common law claims against Hudson, a non-debtor, for actions committed prior to and outside of the Christ Hospital bankruptcy. Indeed, the Third Circuit has held that the Bankruptcy Code provides "no specific authority to extend a[n] . . . injunction to include third-party actions against non-debtors where the liability alleged is not derivative of the debtor." Combustion Eng'g, supra, 391 F.3d at 236. Despite issuing a forty-one (41) page opinion, the Bankruptcy Court not only failed to set forth its jurisdictional analysis but failed to cite to either Continental Airlines (although it cited a separate reported decision of that case before the Bankruptcy Court on a different issue) or Combustion Engineering, both binding Third Circuit precedent and factually analogous to this case.

> **3.    Prime Healthcare's common law claims against Hudson are not interests in Christ Hospital property.**

*Sua sponte*, Bankruptcy Court determined that Prime Healthcare's state law claims against the purchaser of the Christ Hospital bankruptcy estate, arising pre-bankruptcy, are somehow "interests" in the Christ Hospital bankruptcy estate that may be released or impaired by a "free and clear" sale order under section 363(f). The Bankruptcy Court further determined that there was an "undeniable linkage" between Prime Healthcare's state law claims and the "transfer to and use of

hospital assets by [Hudson]" so as to establish that Prime Healthcare's state law claims "are connected to, or arise from, the property being sold, consistent with Third Circuit precedent establishing the scope of § 363(f) interests." See December 3, 2013 Opinion of the Hon. Morris Stern, U.S.B.J. (Item 1), pg. 19. Again, this is incorrect as a matter of fact and law.

The term "interest in property" is not defined by statute, but the Third Circuit has interpreted same to encompass both *in rem* interests and "other obligations that may flow from ownership of the property." In re Trans World Airlines, Inc., 322 F.3d 283, 289 (3d Cir. 2003) ("TWA"). Crucially, the interest must arise from the property being sold; stated differently, the use and ownership of the property must give rise to the interest. See In re USA United Fleet Inc., 496 B.R. 79, 85 (E.D.N.Y. Bankr. 2013) (interpreting TWA and reasoning that it was TWA's "use and ownership of its assets that gave rise to the successor liability claims" and as such are interests in property "in the sense that they arise from the property being sold."). To the contrary, Prime Healthcare's non-derivative claims do not arise from Christ Hospital property or out of Hudson's use and ownership of the property, but from Hudson's pre-bankruptcy action meant to undermine Prime Healthcare's contract to purchase Christ Hospital. The fact that Hudson ultimately was the successful purchaser of Christ

33

Hospital does not transform Prime Healthcare's tortious interference claims into interests in Christ Hospital property. Indeed, nowhere in Prime Healthcare's state court action does it allege any interest in Christ Hospital property. Simply, Prime Healthcare seeks damages from Hudson -- not the debtor, not the debtor's property -- for tortious interference with its contracts.

Moreover, the Bankruptcy Court's interpretation of an "interest in property" is erroneous in that it ignores the fact that the ability to sell property "free and clear" of such interests is intended to protect the successful purchaser from derivative successor liability claims. "[T]he dominant interpretation is that § 363(f) can be used to sell property free and clear of claims that could otherwise be assertable against the buyer of the assets under the common law doctrine of successor liability." See also George W. Kuney, Misinterpreting Bankruptcy Code Section 363(f) and Undermining the Chapter 11 Process, 76 Am. Bankr. L.J. 235, 267 (2002). A bankruptcy court's jurisdiction to enforce and interpret its prior orders is "especially true when a sale order conveys assets free and clear of claims and interests and a party attempts to assert successor liability in another court." In re Tougher Indus., Inc., 06-12960, 2013 WL 1276501, *5 (Bankr. N.D.N.Y. Mar. 27, 2013) (citations omitted) (emphasis added). See also In re

34

Chrysler LLC, 576 F.3d 108, 126 (2d Cir. 2009) cert. granted,
judgment vacated sub nom. Indiana State Police Pension Trust v.
Chrysler LLC, 558 U.S. 1087, 130 S. Ct. 1015, 175 L. Ed. 2d 614
(2009) and vacated sub nom. In re Chrysler, LLC, 592 F.3d 370
(2d Cir. 2010) (explaining that transferring assets free and
clear of existing tort liability was "a critical inducement" to
the sale because otherwise the transfer could "lead to successor
liability").  See also In re Grumman Olson Indus., Inc., 467
B.R. 694, 703 (S.D.N.Y. 2012) (explaining that Section 363(f)
"can be used to sell property free and clear of claims that
could otherwise be assertable against the buyer of the assets
under the common law doctrine of successor liability.").  Prime
Healthcare's non-derivative claims against Hudson are not
successor liability claims, and Hudson cannot shield itself from
tort liability by hiding behind the Bankruptcy Court's Orders.
Indeed, if an entity could avoid liability for its own conduct
by purchasing property from a bankrupt estate, there would be
rampant misuse of the bankruptcy system.

Further, Prime Healthcare's common law claims against
Hudson are unique and individualized.  In a recent case, In re
Elmoral, Inc., No. 13-1467, 2014 WL 259870 (3d Cir. Jan. 24,
2014), the Third Circuit Court of Appeals explained that whether
a cause of action constitutes property of a bankruptcy estate
hinges on whether the plaintiff's cause of action is "general,"

rather than "individualized." Id. at *4. The Court found that a "general" claim is one which would "be based on facts generally available to any creditor, and recovery would serve to increase the pool of assets available to all creditors." Id. at *5. To the contrary, an "individualized" cause of action is a "'personal' one and is a legal or equitable interest only of the creditor . . . A claim for an injury is personal to the creditor if other creditors generally have no interest in that claim." Id. at *3 (citing Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 170 (3d Cir. 2002)). Here, no other creditor has an interest in Prime Healthcare's common law claims against Hudson; the injury resulting from Hudson's tortious interference is personal to Prime Healthcare alone.

Given these facts and binding Third Circuit precedent holding that the "interest" must arise from the property itself, there is no support for the Bankruptcy Court's erroneous legal conclusion that Prime Healthcare's state law claims "transcend the hospital's bankruptcy filing *to become directly attributable to the transfer of assets of Christ Hospital and their use by Hudson*." See December 3, 2013 Opinion of the Hon. Morris Stern, U.S.B.J. (Item 1), pg. 21. See Lefever v. K.P. Hovnanian Enterprises, Inc., 160 N.J. 307, 317-320 (1999) (finding that plaintiff Lefever had no "interest" in the debtor's property as

36

"Lefever's claim was simply not dealt with in the bankruptcy proceedings . . . Plaintiff was not a creditor of the bankrupt . . . he filed no claim in the bankruptcy proceedings"). Moreover, "[t]he court's power to sell free and clear is limited by its authority to affect claims….Its equitable power to sell free and clear must be interpreted consistent with its power to discharge claims under a plan of reorganization." In re White Motor Credit Corp., 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (citing Schweitzer v. Consolidated Rail Corp., 65 B.R. 794 (E.D. Pa. 1986)). As stated throughout this brief, the Bankruptcy Court had no jurisdiction over Prime Healthcare's non-derivative common law claims against Hudson, and the Bankruptcy Court cannot authorize a sale of Prime Healthcare's claims "free and clear" absent subject matter jurisdiction over them. See Stern, supra, 131 S. Ct. 2594.

> **4. Prime Healthcare's common law claims against Hudson do not conflict with the Bankruptcy Court's finding that Hudson was a "good faith purchaser."**

The Bankruptcy Court also erroneously concluded that Prime Healthcare's common law claims against Hudson act as a collateral attack on the Bankruptcy Court's finding that Hudson was a "good faith purchaser." On the contrary, the fact that the Bankruptcy Court determined Hudson was a "good faith purchaser" in the context of the Christ Hospital bankruptcy

37

proceedings does not equate to a determination that Hudson's pre-bankruptcy conduct with respect to Prime Healthcare was in good faith.   The Third Circuit, in the matter of In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147 (1986) explicitly stated that the requirement that a purchaser act in good faith "speaks to the integrity of his conduct in the course of the sale proceedings." (Emphasis added).   Despite this clear instruction, the Bankruptcy Court made only cursory reference to Abbotts Dairies, instead stating that "such a finding is not necessarily fixed or formalized" and even going so far as to question whether good faith findings are "*limited* to a determination of noncollusion, absence of fraud in the bidding process…"   See December 3, 2013 Opinion of the Hon. Morris Stern, U.S.B.J. (Item 1), pg. 28.

The Bankruptcy Court also relied on a Bankruptcy Court decision from the Western District of Missouri, In re Farmland Indus., Inc., 376 B.R. 718 (Bankr. W.D. Mo. 2007) aff'd, 408 B.R. 497 (B.A.P. 8th Cir. 2009) aff'd, 639 F.3d 402 (8th Cir. 2011), that was touted by Hudson to support its proposition that Prime Healthcare's state court action must be enjoined as "inconsistent" with the Bankruptcy Court's finding that Hudson was a good faith purchaser.   The Bankruptcy Court's reliance on this case is misplaced: it is neither precedential nor factually similar to this case.   In Farmland, the Court dismissed a

38

tortious interference claim by an unsuccessful bidder that was entirely based upon the conduct of the debtor and the successful bidder <u>during the sale process</u>, including allegations that they colluded to mislead the bankruptcy court "into believing that the sale . . . was a good deal which should be approved quickly and without close scrutiny." <u>Id.</u> at 727 (emphasis added). Unlike <u>Farmland</u>, Prime Healthcare's common law claims involve Hudson's conduct pre-bankruptcy, and the Bankruptcy Court's finding that Holdco was a "good faith" buyer in the context of the Christ Hospital bankruptcy sale process cannot speak to the Hudson's tortious conduct outside of that process.

**5.** **Prime Healthcare's common law claims against Hudson are not an "attack on the fundamentals of the sale."**

The Bankruptcy Court also determined that Prime Healthcare's common law claims against Hudson are somehow an attack on the fundamentals of the sale of Christ Hospital. This is again erroneous. Prime Healthcare's common law claims against Hudson do not relate to the sale of Christ Hospital in bankruptcy; rather, they relate to Hudson's pre-bankrutpcy conduct which tortiously interfered with its contract. The cases cited by the Bankruptcy Court in support of its view are all inapposite in that they involve damages claims arising directly from conduct <u>during bankruptcy proceedings</u>. <u>See</u>, <u>e.g.</u>, <u>In re CHC Indus., Inc.</u>, 389 B.R. 767 (Bankr. M.D. Fla. 2007)

39

(seeking damages that correspond to the higher offer made for the debtor's property which was allegedly concealed from the bankruptcy court by the successful purchaser); <u>Food King, Inc. v. Norkus Enterprises, Inc.</u>, CIV A 04-1500 MLC, 2006 WL 3674997 (D.N.J. Dec. 13, 2006) (seeking damages from the successful purchaser for its improper use of inside information to bid for the debtor's property); <u>Farmland</u>, <u>supra</u>, 376 B.R. 718 (seeking damages for defendants alleged conspiracy to prevent a party from participating in the bankruptcy auction process and for misleading the bankruptcy court as to the value of bankruptcy property).

In sum, the Bankruptcy Court ignored decades of established precedent expressly limiting the jurisdiction of bankruptcy courts, instead claiming that it has jurisdiction because "confirmations of plans" and "orders approving the sale of property" are "core" proceedings, and because bankruptcy jurisdiction is "in rem." This is not the law. "[A] court cannot simply presume it has jurisdiction in a bankruptcy case to permanently enjoin third-party . . . actions against non-debtors . . . We must remain mindful that bankruptcy jurisdiction is limited, as is the explicit grant of authority to bankruptcy courts." <u>Cont'l Airlines</u>, <u>supra</u>, 203 F.3d at 214 fn.12.

## III. THE BANKRUPTCY COURT'S INJUNCTION VIOLATES PRIME HEALTHCARE'S DUE PROCESS RIGHTS

It is a fundamental legal premise that parties require "notice reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV, 209 F.3d 252, 265 (3d Cir. 2000) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950)). See In re Grumman Olson Indus., Inc., 467 B.R. 694, 706 (S.D.N.Y. 2012). ("The notice requirements of bankruptcy law are founded in fundamental notions of procedural due process.") (internal citation and quotation omitted). Accordingly, disclaimers of liability in bankruptcy sales are "ineffective" where "other principles of law require the imposition of liability." Lefever, supra, 160 N.J. at 319-21 (finding products liability claim not discharged in bankruptcy proceedings where claim was not "dealt with" by bankruptcy court and no notice was given to claimant of possible discharge).

The Bankruptcy Court determined that its Sale and Confirmation Orders enjoined Prime Healthcare's common law claims against Hudson despite the fact that: (1) Prime Healthcare did not file a proof of claim or otherwise participate in the Christ Hospital bankruptcy proceedings; (2)

the injunctive provisions in the Sale and Confirmation Order contained no specific or conspicuous language enjoining Prime Healthcare's claims against Hudson; and (3) the Bankruptcy Court made no findings that the injunction was fair to Prime Healthcare and reasonably necessary to effectuate the administration of the Christ Hospital bankruptcy estate.  These errors of law constitute an abuse of discretion.  See Marvel, supra, 140 F.3d 463.

**A.   Prime Healthcare Could Not Have Been on Notice That Its Common Law Claims Against Hudson Would Be Enjoined.**

As explained in Section II, supra, Prime Healthcare could not have been on notice that its common law claims against Hudson would be enjoined because Prime Healthcare had absolutely no reason to believe from the terms of the Orders that the injunctive provisions could jurisdictionally apply to it or to its claims against Hudson.  The Bankruptcy Court's conclusion that Prime Healthcare somehow "stood by knowingly and without objection" is without basis.  See December 3, 2013 Opinion of the Hon. Morris Stern, U.S.B.J. (Item 1), pg. 22.  Moreover, the Bankruptcy Court did not hear evidence, consider, or make findings on Prime Healthcare's common law claims against Hudson.  In fact, as noted above, the abrupt termination of Prime Heathcare's APA with Christ Hospital was only tangentially alluded to once during the bankruptcy sale proceedings when

counsel for Christ Hospital lamented the loss of that APA and the need to come to terms with a new buyer:

> We've had a lot of lawyers standing here making statements. We need some evidence, and we need a record. We can answer your question precisely about what we mean about pulling it off, about what we mean about healthcare in Hudson County, and about the board's view. And there's parties here who can take an opposing view, and we can look at that and we can discuss that. <u>One of the problems, and Your Honor I think felt my frustration with those two letters in December and January, is we had a deal with somebody else that we thought was very good, and words thrown on a piece of paper led to a political firestorm without analysis, without proof, without financial advisors going through the things that really matter, without the clarity of the people on the ground dealing with the issues, with all due respect, as opposed to the political process, which is on a different level. So, we lost a very good and simple deal that would have never required us to seek assistance of this Court,</u> and here we are, and the two parties who wrote those letters are the two parties who are here, and we're trying to pick the best one for the whole host of reasons.

<u>See</u> Mar. 23, 2012 Hearing Transcript (Item 17), T84:8-85:4 (emphasis added).

This single fleeting reference by Christ Hospital's bankruptcy counsel to "a deal with somebody else," (which plainly refers to the Prime Healthcare's APA) is wholly insufficient to place Prime Healthcare on notice that the Bankruptcy Court would enjoin its common law claims against Hudson. Prime Healthcare's non-derivative claims against Hudson were not before the Bankruptcy Court, were not required to be before the Bankruptcy Court, and could not have been before the

43

Bankruptcy Court.   There was nothing "knowing" about Prime Healthcare's silence; instead, Prime Healthcare's claims against Hudson for tortious interference and unfair competition were not before the Bankruptcy Court and there was nothing to object to.

The erroneous nature of the Bankruptcy Court's position that Prime Healthcare should have objected to the injunctive provisions back in March of 2012 is evidenced by the Court's unprecedented suggestion that Prime Healthcare should have:

> come forward and say . . . I can't litigate here, Judge.   I don't think you have jurisdiction for me to bring suit against [Hudson] . . . I want a specific exclusion from your *in rem* normal course sale orders, and subsequent orders . . . for what I want to reserve as my right to sue on the basis of . . tortious interference with contract and with prospective advantage, economic advantage and unfair competition . . . and this Court would say I'm not litigating that matter but a *prima facie* case had been made out, Mr. Modugno, I'm sorry, but if your client buys – your client is going to have to buy with a shadow of this claim . . .

See October 22, 2013 Transcript of Hearing before the Hon. Morris Stern, U.S.B.J. (Item 2), T46:3-22.

There is no legal support for the position that Prime Healthcare was required to request a reservation of its rights in a bankruptcy proceeding which it (correctly) did not believe could affect its non-derivative claims against Hudson, and even the Bankruptcy Court intimated it could not adjudicate.

Even more unprecedented, the Bankruptcy Court found that its Sale and Confirmation Order could enjoin Prime Healthcare's

44

common law claims against Hudson even though Hudson, at the time of the Christ Hospital bankruptcy sale, was completely unaware of Prime Healthcare's claims.   "[N]othing in the record indicates that as of the bankruptcy sale, Hudson had been made aware of Prime's perceived causes . . . *only* Prime was, at the time of the bankruptcy sale, aware of its position as a potential tort claimant against Hudson as the successful bidder."  See December 3, 2013 Opinion of the Hon. Morris Stern, U.S.B.J. (Item 1), pg. 5 fn.6.  Prime Healthcare denies that it was fully aware of the scope of Hudson's actions at the time of the bankruptcy sale (given that Hudson's *modus operendi* did not become apparent until Hudson later interfered with other Prime Healthcare contracts with distressed hospitals).  But even if it were aware of its claim, how could Hudson have sought an injunction against Prime Healthcare's common law claims in the Bankruptcy Court's Sale and Confirmation Orders if it was unaware of the existence of these claims in the first place? The very notion that Prime Healthcare was on notice that its claims would be enjoined, but, at the same time, that the entity seeking the injunction was unaware of the claims is without a legal or factual basis.

45

**B.    The Injunctive Provisions of the Bankruptcy Court's Orders Are Unenforceable.**

As explained above, Prime Healthcare had no notice that its common law claims against Hudson could be enjoined by Orders entered in the Christ Hospital bankruptcy proceedings.   The Third Circuit has rejected similar attempts to enforce injunctive provisions where a party was not on notice that its rights would be affected by the bankruptcy proceedings.   For example, in Wright v. Corning, 679 F.3d 101, 108 (3d Cir. 2012) cert. denied, 133 S. Ct. 1239 (U.S. 2013), the Third Circuit found that the plaintiffs' claims against the debtor could not have been discharged by the bankruptcy proceedings because "Plaintiffs could only understand that their rights would not be affected in any way by the referenced proceedings, and thus, correctly, would not have taken any action to ensure that their interests were represented."

Perplexingly, the Bankruptcy Court seemingly eschewed the need for notice at all, claiming that because a proceeding under section 363 is an *in rem* proceeding, "[i]t transfers property rights, and property rights are rights good against the world, *not just against parties to a judgment* or persons with notice of the proceeding."   See December 3, 2013 Opinion of the Hon. Morris Stern, U.S.B.J. (Item 1), pg. 25 (citing In the Matter of

Met-L-Wood, 861 F.2d 1012, 1017 (7th Cir. 1988)).  This is again an erroneous view, and the Bankruptcy Court's reliance on Met-L-Wood is misplaced.   Met-L-Wood involved an attempt by a bankruptcy trustee to set aside a judicial sale of the debtor's assets, a scenario wholly inapposite to this matter.  Moreover, in a subsequent Seventh Circuit case, Zerand-Bernal, supra, 23 F.3d 159, the Seventh Circuit held that the bankruptcy court lacked jurisdiction to enjoin proceedings in other courts following the completion of the bankruptcy proceedings.   In Zerand-Bernal the assets of the debtor were transferred "free and clear" to Zerand-Bernal and the bankruptcy court reserved jurisdiction to enforce the sale agreement.   More than four years after the bankruptcy proceedings were completed, a products liability action was brought against the debtor and Zerand-Bernal by a tort creditor in federal court in Pennsylvania.   Zerand-Bernal sought to reopen the bankruptcy proceedings in order to enjoin the Pennsylvania district court action.   The Seventh Circuit held that although the application for the injunction may literally "relate to" the prior bankruptcy proceedings, the bankruptcy court in fact lacked even "related to" jurisdiction, explaining:

> The reference to cases related to bankruptcy cases is
> primarily intended to encompass tort, contract, and
> other legal claims by and against the debtor, claims
> that, were it not for bankruptcy, would be ordinary
> stand-alone lawsuits between the debtor and others but

47

> that section 1334(b) allows to be forced into
> bankruptcy court so that all claims by and against the
> debtor can be determined in the same forum.

Id. at 161 (citing In re Xonics, 813 F.2d 127, 131 (7th
Cir. 1987).

The court also noted that a second purpose of "related to"
jurisdiction is to "force into the bankruptcy court suits to
which the debtor need not be a party but which may affect the
amount of property in the bankrupt estate." Id. at 162
(citations omitted). Because the Pennsylvania suit brought by
the tort creditor was not by or against the debtor[9] and could not
"possibly affect the amount of property available for
distribution to [the debtor's] creditors," it was not "related
to" the bankruptcy proceedings. Id. The court added that the
bankruptcy court also lacked "arising under" jurisdiction
because "[t]he relation of these disputes to the bankruptcy is
too tenuous to empower the bankruptcy court, through a capacious
interpretation of the 'arising under' jurisdiction, to
adjudicate a tort suit to which the (former) debtor is not even
a party, years after the bankruptcy was wound up." Id. at 162-63
(citations omitted).

---

[9] The Zerand-Bernal Court explained that "while [the product
liability action] names the debtor as a defendant, the debtor []
no longer exists, all its assets having been transferred to
Zerand pursuant to the plan of reorganization." Zerand-Bernal,
supra, 23 F.3d at 162.

Clearly, this matter far more closely resembles <u>Zerand-Bernal</u> than <u>Met-L-Wood</u>. Again, Prime Healthcare's claims cannot possibly affect the distribution of the assets of the debtor's estate under the Plan and it had no reason to believe that it should have objected to orders by a court that had no jurisdiction to adjudicate or enjoin its claims.

C.   **The Injunctive Provisions Do Not Contain the Specific or Conspicuous Language Necessary to Provide Adequate Notice.**

The Bankruptcy Court found that its Sale and Confirmation Orders "explicit[ly]" provided protection to Hudson from Prime Healthcare's common law claims, citing to paragraph 6 of the Sale Order. <u>See</u> December 3, 2013 Opinion of the Hon. Morris Stern, U.S.B.J. (Item 1), pg. 26. On the contrary, paragraph 6 states that: "<u>the transfer of the Assets, and the assignment</u> of the Assigned Contracts and any assigned Designated Contracts...does not and will not subject the Successful Bidder...to any liability <u>by reason of such transfers and assignments. . .</u>" <u>See</u> March 27, 2012 Sale Order (Item 3), ¶ 6 (emphasis added). Again, it is not the transfer of Christ Hospital assets or the assignment of Christ Hospital contracts that has subjected Hudson to liability, it is Hudson's own conduct, pre-bankruptcy for which Prime Healthcare seeks to hold Hudson liable. Hudson is liable for this conduct regardless of the fact that Christ

49

Hospital filed for bankruptcy, and regardless of the fact that Hudson purchased Christ Hospital.

Moreover, Bankruptcy Rule 3016(c) provides that "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement <u>shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction.</u>" (Emphasis added). The only language appearing in "conspicuous language" pursuant to Rule 3016(c) is in Article VIII of the Plan, wherein it states:

> **EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE DEADLINE FOR FILING SUCH PROOFS OF CLAIM SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO THE AFFECTED CREDITOR, OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS SHALL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.**

<u>See</u> Joint Plan of Orderly Liquidation (Item 8), pg. 30.

The above language does not mention Prime Healthcare's common law claims for tortious interference and unfair competition. In fact, the injunctive provisions of the Confirmation Order, Plan and Disclosure Statement fail to contain any language that would put Prime Healthcare on notice that its common law claims <u>against Hudson</u> could be enjoined.

The Confirmation Order, Plan and Disclosure Statement state: "[A]ll entities who have held, hold, or may hold Claims <u>against the Debtor</u>, are hereby permanently enjoined..." <u>See</u> June 4, 2013 Confirmation Order (Item 7), pg. 28; Joint Plan of Orderly Liquidation (Item 8), pgs. 43-44; Disclosure Statement (Item 6), pg. 39. (Emphasis added). Similarly, the Sale Order states: "[A]ll parties and/or entities asserting Liens and Claims and contract rights <u>against the Debtor</u> and/or any of the Assets are hereby permanently enjoined..." <u>See</u> March 27, 2012 Sale Order (Item 3), pg. 13 (emphasis added). By their very terms, the Bankruptcy Court's orders only put Prime Healthcare on notice that claims, liens and contract rights <u>against Christ Hospital, the debtor</u>, will be enjoined.

Moreover, Bankruptcy Rule 7001(7) requires an adversary proceeding to issue any injunction not provided for in the Plan. There is a "due process right not to have that issue resolved without [an adversary proceeding]." <u>In re Semcrude, L.P.</u>, 728 F.3d 314, 322 (3d Cir. 2013) (<u>quoting</u> <u>In re Mansaray-Ruffin</u>, 530 F.3d 230, 242 (3d Cir. 2008)). This right even "'trumps the finality' of confirmed plans." <u>Id.</u> (quoting <u>Mansaray</u>, 530 F.3d at 238). No adversary proceeding was held in this case.

**D.    Prime Healthcare Did Not Consent to the Injunction of
Its Common Law Claims Against Hudson.**

11 U.S.C. § 363(f) provides that "the trustee may sell
property under subsection (b) or (c) of this section free and
clear of any interest in such property of an entity other than
the estate, only if:

> (1) applicable nonbankruptcy law permits sale of such
> property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which
> such property is to be sold is greater than the
> aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or
> equitable proceeding, to accept a money satisfaction
> of such interest.  (Emphasis added).

Relying on a non-binding and oft-criticized Seventh Circuit
opinion, <u>FutureSource LLC v. Reuters Ltd.</u>, 312 F.3d 281 (7th
Cir. 2002), the Bankruptcy Court erroneously determined that
Prime Healthcare's failure to object to the sale of Christ
Hospital equates to consent by Prime Healthcare to extinguish
its common law claims against Hudson.  However, the Third
Circuit, in <u>Continental Airlines</u>, <u>supra</u>, 203 F.3d at 214 fn.11,
specifically recognized that "[s]everal of the Bankruptcy Courts
in our Circuit have stated that non-debtor releases are
permissible only if consensual" and then went on to note
bankruptcy courts that have held that "releases of non-
derivative third-party claims against non-debtor[s] cannot be
accomplished without the affirmative agreement of the creditor

52

affected." Id. (citing In re Zenith Electronics Corp., 241 B.R. 92, 111 (Bankr. D.Del. 1999)). See also In re West Coast Video Enterprises, Inc., 174 B.R. 906, 911 (Bankr. E.D. Pa. 1994) ("[E]ach creditor bound by the terms of the [non-debtor] release must individually affirm same, either with a vote in favor of a plan including such a provision, or otherwise.").

There was no affirmative agreement, or any statement at all by Prime Healthcare evidencing consent, either explicitly or implicitly. Moreover, Prime Healthcare's failure to object is not relevant.[10] In Continental Airlines, 203 F.3d 203, the Third Circuit found that a provision in the debtor's plan of reorganization releasing and permanently enjoining third-party plaintiffs' class actions against non-debtors for securities fraud was invalid. In reaching its decision, the Court noted that even though plaintiffs did not object to the provision at the time of the plan confirmation hearing, see id. at 207, the plaintiffs' failure to object was non-dispositive because "[t]he hallmarks of permissible non-consensual releases-fairness . . . are all absent here," see id. at 214.

---

[10] Prime Healthcare's failure to object is also not relevant because "a litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance." Kontrick v. Ryan, 540 U.S. 443, 455 (2004).

**E.   The Bankruptcy Court Did Not Make Any Findings that the Injunction Was Fair to Prime Healthcare or Necessary to Effectuate Administration of the Christ Hospital Bankruptcy Estate.**

A Bankruptcy Court's failure to "specifically address[] the release and permanent injunction of [the third-party's] claims" is fatal, as the Third Circuit has explained:

> the order confirming the [] Debtors' plan of reorganization and releasing and permanently enjoining Plaintiffs' claims was not accompanied by any findings that the release was fair to the Plaintiffs and necessary to the [debtor's] reorganization.   Without such findings, a release and permanent injunction cannot stand on their merits under any of the standards set forth in the case law of other circuits.

Id.

The Court below did not make findings that the purported release of Prime Healthcare's claims against Hudson was fair[11] or somehow necessary to the administration of the Christ Hospital bankruptcy estate.   Indeed, the record is devoid of any findings that the injunction of Prime Healthcare's common law claims against Hudson is necessary to ensure the success of the administration of the Christ Hospital bankruptcy estate.   Hudson is and remains the successful purchaser of Christ Hospital and

---

[11] The Bankruptcy Court also did not provide Prime Healthcare any compensation in exchange for the release of its common law claims against Hudson.   In Precision Indus., Inc. v. Qualitech Steel SBQ, LLC, 327 F.3d 537, 547-48 (7th Cir. 2003), the court considered the compensation owed to a lessee whose interests would be adversely affected by the sale of the estate property and found that the bankruptcy court was obligated to ensure that their interests are adequately protected.

its assets, and Prime Healthcare's state court action will not change that.  Accordingly, the Bankruptcy Court's failure to make such findings is fatal and Prime Healthcare's common law claims against Hudson cannot be enjoined.

> **F.  Injunction of Prime Healthcare's Common Law Claims Against Hudson Deprives Prime Healthcare of a Jury Trial.**

As bankruptcy courts "are inherently proceedings in equity," they lack the authority to provide certain remedies to litigants, such as the Seventh Amendment right to a jury trial. See Katchen v. Landy, 382 U.S. 323, 336-37 (1966).  Accordingly, the Seventh Amendment prohibits a bankruptcy court from stripping a party of its constitutional entitlement to a jury trial where the party does not submit a proof of claim in the bankruptcy proceeding.  In Langenkamp v. Culp, 498 U.S. 42, 44-45 (1990), the Supreme Court explained:

> If a party does not submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial. Accordingly, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate.

Prime Healthcare did not file a proof of claim in the Christ Hospital bankruptcy proceedings and therefore could not have consented to jurisdiction in the Bankruptcy Court which results in a waiver of its constitutional right to a jury trial.

In sum, Prime Healthcare's due process rights were violated by the Bankruptcy Court at every stage of the Christ Hospital bankruptcy proceedings and, most recently, by the Bankruptcy Court's December 3, 2013 Order.

## IV.   THE BANKRUPTCY COURT'S DECEMBER 3, 2013 ORDER CONTRAVENES PRINCIPLES OF FEDERAL–STATE COMITY

On August 22, 2013, the Superior Court determined that: "Allowing this litigation to proceed with respect to Christ Hospital would not constitute a collateral attack on the previous orders from the Bankruptcy Court or Superior Court. Those proceedings relate to the sale of Christ Hospital after it went into bankruptcy.  Plaintiff's antitrust claims pertain to Defendants' actions that took place prior to, and allegedly during, this transaction."  See August 22, 2013 Opinion of Hon. Philip H. Mizzone, Jr., J.S.C. (Item 9), pg. 2.   Four months later, in stark contrast, the Bankruptcy Court found the conduct of Hudson to be "obviously intertwined with [the] Chapter 11 case."  See December 3, 2013 Opinion of the Hon. Morris Stern, U.S.B.J. (Item 1), pg. 4.

Notwithstanding the Bankruptcy Court's legal error in making its ruling, it should never have made such a determination in the first place: the "interests of finality and comity preclude a collateral attack on the first court's decision as to jurisdiction, even if incorrect."  In re Skyline

56

Woods Country Club, 636 F.3d 467, 470 (8th Cir. 2011) (citing
Durfee v. Duke*, 375 U.S. 106, 111 (1963)).  "Most essentially,
federal and state courts are complementary systems for
administering justice in our Nation . . . Cooperation and
comity, not competition and conflict, are essential to the
federal design."  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574,
586 (1999).

This Court must reverse the Bankruptcy Court's December 3,
2013 Order to preserve the integrity of the state court action
and to protect federal-state comity.

### A.   The Bankruptcy Court Should Have Abstained from Deciding Hudson's Motion for an Injunction.

"[F]ederal courts apply the doctrine of comity, which
'teaches that one court should defer action on causes properly
within its jurisdiction until the courts of another sovereignty
with concurrent powers, and already cognizant of the litigation,
have had an opportunity to pass upon the matter.'"  Rose v.
Lundy, 455 U.S. 509, 518 (1982).  The doctrine of comity
therefore allows courts to avoid the tension between "the
federal interests in retaining jurisdiction over the dispute and
the competing concern for the 'independence of state action.'"
Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728 (1996)
(acknowledging "the detrimental impact" of "contradictory
adjudications by the state and federal courts"); Edmonston v.

Sisk, 156 F.2d 300, 303 (10th Cir. 1946) ("[O]rdinarily the rule of comity would stay the hand of the Federal court until final adjudication between the same parties the in state court"); Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005) ("Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation").

The doctrines of comity and abstention mandate that a Bankruptcy Court refrain from interfering in and effectively overruling a state court action.   For example, in Pennzoil v. Texaco, Inc., 481 U.S. 1, 11 (1987), the Supreme Court explained that federal courts should refrain from interfering in state court proceedings where "the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government."   The Pennzoil Court then recognized that States have "important interests in administering certain aspects of their judicial systems," and that federal injunctions in such cases not only "interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgment were obtained."   See id. at 12-14. Here, the Bankruptcy Court, ignoring Prime Healthcare's pending motion to withdraw the reference, decided Hudson's motion for an

58

injunction while a state court action (including an appeal for lack of subject matter jurisdiction) was pending.  This directly contravened the decisions of the Superior Court and federal-state comity.

**B.   Hudson Waived Its Rights to Bankruptcy Court Review.**

The Supreme Court has explained that "if a party freely and without reservation submits his federal claim for decision by state courts, litigates them there and has them decided there, then -- whether or not he seeks direct review of the state decision in [the U.S. Supreme Court] -- <u>he has elected to forgo his right to return to the District Court</u>."  <u>England v. La. State Bd. Of Med. Exam'rs</u>, 375 U.S. 411, 419 (1964) (emphasis added).  For example, in <u>England</u>, a group of chiropractic graduates brought an action in federal court against certain requirements of a state medical board.  The federal court abstained until the state courts ruled on the issue.  The graduate students then brought action in state court, and, having failed to obtain relief, went back to the District Court seeking relief under the same federal claims.  Justice Brennan, writing for the Court, explained:

> We see no reason why a party, after unreservedly litigating his federal claims in the state courts although not required to do so, should be allowed to ignore the adverse state decision and start all over again in the District Court. Such a rule would not only countenance an unnecessary increase in the length and cost of the litigation, it would also be a

potential source of friction between the state and federal judiciaries.

Id.

Similarly, Hudson waived its rights to bankruptcy court or any federal court review by litigating these issues in the state court, at least until it has exhausted its state appeals and sought a direct appeal to the Supreme Court. Accordingly, the Bankruptcy Court should not have decided Hudson's motion for an injunction.

### C. The Bankruptcy Court Did Not Have the Power to Overrule the New Jersey Superior Court.

In In re James, 940 F.2d 46, 54 (3d Cir. 1991), the Third Circuit explained that "federal district courts and federal courts of appeals lack jurisdiction to review or reverse a state court judgment on the merits." In James, a state court had entered a default judgment in a civil forfeiture proceeding against a Chapter 7 debtor. The bankruptcy court held that the state proceeding violated the automatic stay and vacated the state judgment. The district court affirmed. The Third Circuit reversed, holding that the bankruptcy and district courts improperly assumed appellate review of a state court proceeding and noting that a judgment validly entered by a court of competent jurisdiction "is considered valid until overturned or vacated by that court or an appellate court with supervisory powers over that court's system." Id. at 52. The James Court

60

noted the "overriding need for comity between state and federal courts." Id. at 51.   See also In re Brown, 244 B.R. 62, 70 (Bankr. D.N.J. 2000) (finding that "the action by a bankruptcy court to vacate a state court judgment following a collateral review on the merits" is not permissible); In re Miloszar, 238 B.R. 266, 269 (D.N.J. 1999) ("The Bankruptcy Court does not have the power to vacate a State Court default judgment").

As Prime Healthcare's state court action is still pending and Hudson's interlocutory appeal has yet to be decided, the Bankruptcy Court may not interfere by entering a contradictory ruling, no matter how much it may disagree with the Superior Court.[12]

### D.   The Bankruptcy Court's Order Condones Hudson's Forum Shopping.

Not to be understated in this matter, the Bankruptcy Court's Order effectively condones Hudson's forum shopping in this matter.   Hudson defended itself against Prime Healthcare's

_____

[12] The James court articulated "one exception to this hard and fast rule of federal-state comity, and it comes into play only when the state proceedings are considered a legal nullity and thus void ab initio." James, 940 F.2d at 52 (citing Kalb v. Feuerstein, 308 U.S. 433, 438-40 (1940)).   However, in Skyline Woods, supra, 636 F.3d at 470, the Eighth Circuit explained that the "void ab initio" exception to the rule against collateral attack "has been limited to collateral attacks on state-court judgments that conflict with the exclusive jurisdiction of federal bankruptcy courts." Id. at 471.   Here, the Bankruptcy Court does not possess jurisdiction at all, let alone exclusive federal jurisdiction over Prime Healthcare's common law claims against Hudson.

state court action for more than six months -- even filing an interlocutory appeal -- before filing a motion for an injunction in the Bankruptcy Court, something it could have easily sought when the state court action was first filed.  It was only after the Superior Court determined that the state court action "would not constitute a collateral attack on the previous orders from the Bankruptcy Court" -- and after it first sought state appellate review -- that Hudson improperly sought appellate relief from the Bankruptcy Court.  "[A] defendant must not be allowed to test the waters in state court and, finding the temperature not to its liking, beat a swift retreat to federal court . . . [s]uch behavior falls within the very definition of forum-shopping and is antithetical to federal-state court comity."  St. John v. Affinia Grp., Inc., Case No. 09-2501 (WJM), 2009 WL 1586503, *3 (D.N.J. June 8, 2009) (internal citation omitted).  Hudson's efforts to have the Bankruptcy Court enjoin the Superior Court action under the guise that the Bankruptcy Court somehow enjoined Prime Healthcare's common law claims is an improper attempt to engage in forum shopping, and the Bankruptcy Court was required to deny Hudson's motion for an injunction.  See In re SB Properties, Inc., 185 B.R. 206, 210 (Bankr. E.D. Pa. 1995) (dismissing bankruptcy filing where the parties filed in Bankruptcy Court so the dispute could be "brought to a quicker resolution" because "the jurisdiction of

this Court has been invoked for an improper purpose in this instance.").

**V.  THE BANKRUPTCY COURT'S DECEMBER 20, 2013 ORDER IS AN ABUSE OF DISCRETION AND PRIME HEALTHCARE'S STATE COURT ACTION SHOULD NOT BE DISMISSED PENDING APPEAL**

As argued supra, significant constitutional issues must be determined by this Court on appeal, including Prime Healthcare's right to due process.  The Bankruptcy Court's Order requiring Prime Healthcare to dismiss its state court action against Hudson before this Court -- a Court with jurisdiction over non-derivative common law claims -- can determine whether the Bankruptcy Court even had the jurisdiction in the first place is an abuse of discretion, and must be reversed on appeal.  The status quo must be preserved pending this Court's review of the findings of fact and conclusions of law by the Court below.

**A.  Legal Standard.**

To determine whether to grant a stay under Rule 8005, a court considers: "1) whether the appellant is likely to succeed on the merits of the appeal; 2) whether the appellant will suffer irreparable injury if the stay is not granted; 3) whether a stay would substantially harm other parties in the litigation; [and] 4) whether a stay is in the public interest." Family Kingdom, Inc. v. EMIF New Jersey Ltd. P'ship, 225 B.R. 65, 69 (D.N.J. 1998) (internal citations omitted).  A party seeking a

stay pending appeal must satisfy all four factors, see In re G-I Holdings Inc., 420 B.R. 216, 283 (D.N.J. 2009); however, "[t]he factors need not be rigidly applied or weighed equally and no single factor is determinative of the result," see St. John v. Affinia Grp., Inc., Case No. 09-2501, 2009 WL 1586503, *2 (D.N.J. June 8, 2009) (citing Hilton v. Braunskill, 481 U.S. 770, 777 (1987)). See also In re Pagano Dev. Co., Inc., Case No. 11-4448, 2011 WL 5082203, *2 (D.N.J. Oct. 25, 2011) ("These factors should not be rigidly applied, but require a determination based on the individual circumstances of a particular case.").

**B.   Likelihood of Success on the Merits.**

As set forth in detail above, the Bankruptcy Court was without jurisdiction to enjoin Prime Healthcare's common law claims against Hudson.  Further, the Bankruptcy Court's December 3, 2013 Order violates Prime Healthcare's due process rights as it requires Prime Healthcare to dismiss its state court action against Hudson because the action was allegedly enjoined by Orders entered in the Christ Hospital bankruptcy proceedings. Again, Prime Healthcare was without any notice that the Bankruptcy Court jurisdictionally could enjoin its claims, or that its claims were even before the Bankruptcy Court. Moreover, the Bankruptcy Court's December 3, 2013 Order plainly violates federal-state court comity by effectively overruling

64

the decision of the Superior Court, and ordering the dismissal of a pending state court action. For these reasons, Prime Healthcare is likely to succeed on appeal, and the Bankruptcy Court's December 3, 2013 Order should be stayed.

**C.   Irreparable Injury If the Stay Is Not Granted.**

Any Order enjoining Prime Healthcare from litigating its state law claims will cause irreparable injury. Irreparable harm is harm that "cannot be redressed by a legal or equitable remedy[.]" Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 595 (3d Cir. 2002) (internal citation omitted). The harm must be such that "the only way of protecting the plaintiff" is injunctive relief. Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). Irreparable harm is "immediate" and injunctive relief is justified when "compensation in money cannot atone for it." ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987).

Here, Prime Healthcare faces irreparable harm due to the loss of its constitutional right to due process. Where "preliminary injunctive relief is requested to prevent the violation of constitutional rights, no further showing of irreparable injury is required." Murray v. Silberstein, 882 F.2d 61, 64 (3d Cir. 1989) (citing Elrod v. Burns, 427 U.S. 347, 373-75(1976)). Indeed, "an alleged constitutional infringement

will often alone constitute irreparable harm." Nat'l Collegiate
Athletic Ass'n v. Christie, 926 F. Supp. 2d 551, 578 (D.N.J.
2013) aff'd sub nom. Nat'l Collegiate Athletic Ass'n v. Governor
of New Jersey, 730 F.3d 208 (3d Cir. 2013) (quoting Ass'n for
Fairness in Bus., Inc. v. New Jersey, 82 F. Supp. 2d 353, 363-64
(D.N.J. 2000)). "Constitutional harm is not necessarily
synonymous with the irreparable harm necessary for issuance of a
preliminary injunction." Hohe v. Casey, 868 F.2d 69, 72-73 (3d
Cir. 1989). However, "[w]here constitutional rights have been
infringed upon, the threat of irreparable injury and disservice
to the public interest is clear." E.B. v. Poritz, 914 F.Supp. 85
(D.N.J. 1996) rev'd on other grounds E.B. v. Verniero, 119 F.3d
1077 (3d Cir. 1997). See also Conestoga Wood Specialties Corp.
v. Sec'y of U.S. Dep't of Health & Human Servs., 724 F.3d 377,
416 (3d Cir. 2013) cert. granted, 134 S. Ct. 678 (U.S. 2013)
(Jordan, J., dissenting) (citing 11A Charles Alan Wright, Arthur
R. Miller & Mary Kay Kane, Federal Practice and Procedure §
2948.1 (2d ed.1995)); Planker v. Ricci, CIV. 07-2679, 2010 WL
4447281 (D.N.J. Nov. 1, 2010) ("Generally, the violation of a
constitutional right itself constitutes irreparable injury").

    Prime Healthcare will also suffer irreparable harm because
a dismissal of the state court action may render these appeals
moot as no case or controversy would exist. Generally, the fact
that an appeal will become moot absent a stay does not by itself

66

constitute a risk of irreparable harm.  In re Tribune Co., 477 B.R. 465, 476-77 (Bankr. D. Del. 2012).  However, where dismissal for mootness would entail the loss of substantial rights, mootness may constitute an irreparable injury.  See In re St. Johnsbury Trucking Co., Inc., 185 B.R. 687, 690 (S.D.N.Y. 1995) (finding risk of irreparable harm where dismissal based upon mootness would entail the loss of movant's ability to object to a Chapter 11 plan).  Here, like in St. Johnsbury, dismissal of the state court action this would result in Prime Healthcare's common law claims being lost without any meaningful opportunity for review.

Third, prejudice occasioned by delay, including the destruction or loss of evidence, may constitute irreparable harm.  Freeman & Bass, P.A. v. State of N.J. Comm'n of Investigation, 359 F. Supp. 1053, 1061 (D.N.J. 1973) ("Delay in such investigations may result in irreparable harm … where records are lost or witnesses die"); Roe v. State of Ala. By & Through Evans, 43 F.3d 574, 586 (11th Cir. 1995) (finding irreparable harm where review of claims arising from contested election would be obstructed absent injunctive relief); Am. Friends Serv. Comm. v. Webster, 485 F. Supp. 222, 233 (D.D.C. 1980) (finding irreparable harm where adherence to record retention policy of Federal Bureau of Investigation would result in destruction of relevant evidence).  Although its state court

67

action was timely, Prime Healthcare now faces the difficulties against which statutes of limitations are designed to protect. As time passes, facts will become more difficult to corroborate with documentary or testimonial evidence and Prime Healthcare will become less able to pursue its claims. This harm will be compounded if Prime Healthcare is compelled to withdraw its claims, even without prejudice.

Fourth, "loss of good will" constitutes irreparable injury. Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998). Furthermore, "loss of market share is a 'potential harm which cannot be redressed by a legal or an equitable remedy following a trial'" and therefore also constitutes irreparable harm. Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 595-96 (3d Cir. 2002) (citation omitted); Everett Labs., Inc. v. Breckenridge Pharm., Inc., 573 F. Supp. 2d 855, 867-69 (D.N.J. 2008) (finding loss of market share to be beyond quantification so as to constitute irreparable harm). Here, Hudson has already damaged Prime Healthcare's good will and reputation and diminished its potential share of the New Jersey market. If Prime Healthcare is compelled to withdraw its state law claims, it will likely become vulnerable to new public attacks by Hudson and other competitors. In particular, Hudson and others may characterize Prime Healthcare as being frivolously litigious,

68

citing the Bankruptcy Court's orders, while Prime Healthcare's applications to purchase other New Jersey hospitals are under review by state authorities.  This is not conjecture; this is exactly the *modus operandi* employed by Hudson that gives rise to Prime Healthcare's common law claims.  The industry of hospital acquisition and operation is fiercely competitive and extensively regulated.  Any such conduct would irreparably damage Prime Healthcare's reputation, goodwill, and market share.

> **D.  Harm to Other Parties.**

There is no risk of harm to any other party that would prevent the issuance of a stay pending appeal.  Hudson has consented to the stay of the December 2013 orders pending this appeal.  In addition, granting a stay will cause no harm to Christ Hospital or the Christ Hospital bankruptcy estate as Prime Healthcare in no way seeks to interfere with its administration or encumber any rights of the debtor.

> **E.  Public Interest.**

The public interest is served by granting the stay.  "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 n. 8 (3d Cir. 1994) (citing Duraco

Prods., Inc. v. Joy Plastic Enter., Ltd., 40 F.3d 1431, 1438 (3d
Cir. 1994)).  Additionally, "it is always in the public interest
to prevent the violation of a party's constitutional rights."
Jones v. Caruso, 569 F.3d 258, 278 (6th Cir. 2009) (citing
Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th Cir.
1988).  Here, prevention of further due process and
constitutional violations serves the public interest.
Additionally, Hudson's improper application for review of a
state court decision by a federal court implicates the public
interest in federalism and comity.

## CONCLUSION

For these reasons, Prime Healthcare respectfully requests
that this Court reverse the Bankruptcy Court's December 3, 2013
Order and opinion, and stay enforcement of the Bankruptcy
Court's December 3, 2013 and December 20, 2013 Orders on appeal.

Respectfully submitted,


By: /s/ Bruce S. Rosen
    William S. Katchen
    Bruce S. Rosen
    Sarah L. Fehm

Dated:    February 14, 2014