IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: Christ Hospital, Debtor - a New Jersey Not-for-profit corporation<br><br>PRIME HEALTHCARE SERVICES, INC.,<br><br>　　　　Appellant,<br><br>　v.<br><br>HUDSON HOSPITAL PROPCO, INC., HUDSON HOSPITAL OPCO, LLC, HUDSON HOSPITAL HOLDCO, LLC, and VIVEK GARIPALLI<br><br>　　　　Appellees. | Civil Action No. 2:14-cv-472-ES |

---

### APPELLANT'S REPLY BRIEF

---

McCUSKER, ANSELMI, ROSEN & CARVELLI, PC
210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
Telephone: (973) 635-6300
Facsimile: (973) 635-6363

LAW OFFICES OF WILLIAM S. KATCHEN, LLC
210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
Telephone: (973) 457-0130

*Counsel for Prime Healthcare Services, Inc.*

On the Brief:
Bruce S. Rosen
William S. Katchen
Sarah L. Fehm
Zachary D. Wellbrock

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................... i

TABLE OF AUTHORITIES ......................................... iii

PRELIMINARY STATEMENT .......................................... 1

LEGAL ARGUMENT ................................................. 2

    I.    Prime's State Law Claims Against Hudson Are
        Not Core.................................................. 7

    II.   Prime's State Law Claims Against Hudson Are Not
        Related to the Christ Hospital Bankruptcy
        Proceedings............................................. 10

    III. Jurisdiction Is Limited Post-Confirmation............. 11

    IV.   The Bankruptcy Court Wrote Its Own Jurisdiction
        Ticket, in Violation of Established Bankruptcy Law..... 12

    V.    The Bankruptcy Court's Finding That Hudson Was A Good
        Faith Purchaser Does Not Extend to Hudson's Pre-
        Petition Conduct....................................... 14

    VI.   Prime Was Not On Notice That Its Claims Were Included
        in the Sale Order...................................... 16

    VII. Prime Did Not Consent To the Free And Clear Sale of
        Christ Hospital Assets................................. 19

    VIII.  Prime's Seventh Amendment Rights Are Violated by the
        Bankruptcy Court's December 3rd and December 20th
        Orders................................................. 20

    IX.   The Bankruptcy Court Should Not Have Heard Hudson's
        Application in the Interest of Comity and
        Abstention ............................................ 21

    X.    The Doctrine of Res Judicata and Collateral Estoppel
        Do Not Bar Prime's State Court Action.................. 22

    XI.   Prime Would Suffer Irreparable Harm Absent
        a Stay................................................. 25

CONCLUSION ............................................... 26

## TABLE OF AUTHORITIES

Page(s)

**Cases**

In re Abbotts Dairies of Pennsylvania, Inc.,
  788 F.2d 143 (1986) ......................................... 14

In re BWP Gas, LLC,
  354 B.R. 701 (E.D. Pa. 2006) ............................... 21

In re Camp Arrowhead, Ltd.,
  429 B.R. 546 (W.D. Tex. 2010) ............................. 15

In re Combustion Eng'g, Inc.,
  391 F.3d 190 (3d Cir. 2004) ..................... 3, 7, 12, 13

Copelin v. Spirco, Inc.,
  182 F.3d 174 (3d Cir. 1999) ............................... 10

In re DeCelis,
  349 B.R. 465 (Bankr. E.D. Va. 2006) ....................... 19

In re E. Airport Dev., LLC,
  443 B.R. 823 (B.A.P. 9th Cir. 2011) ....................... 20

E. Minerals & Chemicals Co. v. Mahan,
  225 F.3d 330 (3d Cir. 2000) ............................... 24

FutureSource LLC v. Reuters, Ltd.,
  312 F.3d 281 (7th Cir. 2002) .............................. 19

Hamilton v. Herr,
  540 F.3d 367 (6th Cir. 2008) .............................. 22

In re Harris,
  590 F.3d 730 (9th Cir. 2009) ............................... 9

In re James,
  940 F.2d 46 (3d Cir. 1991) .............................. 2, 22

Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,
  458 F.3d 244 (3d Cir. 2006) ............................ 24, 25

Langenkamp v. Culp,
  498 U.S. 42 (1990) ........................................ 20

*Lefever v. K.P. Hovnanian Enterprises, Inc.*,
    160 N.J. 307 (1999) ........................................ 18

*In re Lisanti Foods, Inc.*,
    329 B.R. 491 (D.N.J. 2005) ................................. 4

*Lubben v. Selective Serv. Sys. Local Bd. No. 27*,
    453 F.2d 645 (1st Cir. 1972) .............................. 22

*In re Mariner Post-Acute Network, Inc.*,
    267 B.R. 46 (Bankr. D. Del. 2001) .................... 23, 24

*Marmon Coal Co. v. Dir., Office of Workers' Comp.*
    *Programs*, 726 F.3d 387 (3d Cir. 2013) .................. 23

*In the Matter of Met-L-Wood Corp.*,
    861 F.2d 1012 (7th Cir. 1988) ............................. 8

*In re Midway Games Inc.*,
    446 B.R. 148 (Bankr. D. Del. 2011) ....................... 12

*In re Ortiz*,
    665 F.3d 906 (7th Cir. 2011) .............................. 6

*Patsy v. Bd. of Regents of State of Fla.*,
    457 U.S. 496 (1982) ...................................... 22

*Pennzoil Co. v. Texaco, Inc.*,
    481 U.S. 1 (1987) ........................................ 22

*Matter of Penrod*,
    50 F.3d 459 (7th Cir. 1995) .............................. 17

*Picard v. HSBC Bank PLC*,
    450 B.R. 406 (S.D.N.Y. 2011) .............................. 7

*In re Polaroid Corp.*,
    BKR. 01-10864-PJW, 2004 WL 2223301 (D. Del. Sept.
    30, 2004) ................................................ 14

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004) ...................... 3, 11, 12

*In re Roberts*,
    249 B.R. 152 (Bankr. W.D. Mich. 2000) .................... 20

*In re S. White Transp., Inc.*,
    725 F.3d 494 (5th Cir. 2013) ............................. 17

In re Smith,
    BR 13-61627-TMR7, 2014 WL 738784 (Bankr. D. Or. Feb.
    26, 2014) ....................................................... 20

Stern v. Marshall,
    131 S. Ct. 2594 (2011) ...................................... 4, 7

In re Tempo Technology Corporation,
    202 B.R. 363 (D. Del. 1996) .................................. 14

In Re Trans World Airlines, Inc.,
    01-0056(PJW), 2001 WL 1820325 (Bankr. D. Del. Mar.
    27, 2001), aff'd, In re Trans World Airlines, Inc.,
    322 F.3d 283 (3d Cir. 2003) .................................. 10

In re Trans World Airlines, Inc.,
    01-0056-PJW, 2002 WL 500569 (D. Del. Mar. 26, 2002) ......... 14

In re Trans World Airlines, Inc.,
    278 B.R. 42 (Bankr. D. Del. 2002) ............................ 9

In re Trans World Airlines, Inc.,
    322 F.3d 283 (3d Cir. 2003) ............................... 9, 10

In re USA United Fleet Inc.,
    496 B.R. 79 (E.D.N.Y. Bankr. 2013) ........................... 9

In re W.R. Grace & Co.,
    591 F.3d 164 (3d Cir. 2009) ............................... 4, 10

Wellness Int'l Network, Ltd. v. Sharif,
    727 F.3d 751 (7th Cir. 2013) .............................. 4, 5

Wright v. Corning,
    679 F.3d 101 (3d Cir. 2012), cert. denied, 133 S.
    Ct. 1239, 185 L. Ed. 2d 177 (U.S. 2013) ..................... 3

Zerand-Bernal Grp., Inc. v. Cox,
    23 F.3d 159 (7th Cir. 1994) ................................. 12

Statutes

11 U.S.C. 105(a) ............................................... 12

11 U.S.C. 363(f) .......................................... 8, 9, 10

28 U.S.C. 157(b)(2)(N) ...................................... 7, 9

28 U.S.C. § 1334(d) .......................................... 21

## PRELIMINARY STATEMENT

In asserting that this matter involves a "ho-hum" interpretation of orders entered in a bankruptcy proceeding, Hudson's opposition brief ignores federal-state comity, oversimplifies the limits of bankruptcy court jurisdiction and distorts the purpose behind the releases contained in the Christ Hospital Sale and Confirmation Orders.

The simple truth is that Hudson[1] tortiously interfered with Prime's contract to purchase Christ Hospital, and now seeks to avoid liability by hiding behind its status as the successful purchaser of Christ Hospital in bankruptcy. This is not the purpose of a sale and confirmation order, and is certainly not the purpose of the Bankruptcy Code. Prime is entitled to litigate its common law claims against Hudson in state court and, respectfully, the Bankruptcy Court's December 3rd and 20th Orders deprive Prime of its right to due process without notice or an opportunity to be heard.

Perhaps most concerning, the Bankruptcy Court has essentially stripped the Superior Court of New Jersey of jurisdiction over common law tortious interference claims, and overruled specific findings by the Superior Court trial judge.

---

[1]  The Hudson entities named in this action are Hudson Hospital Propco, LLC, Hudson Hospital Opco, LLC, Hudson Hospital Holdco, LLC, and Vivek Garipalli.  Prime Healthcare Services, Inc. will be referred to as "Prime" herein in the interest of brevity.

While the magnitude of the Bankruptcy Court's actions are apparently lost on Hudson, they are crucial to this Court's determination.  The United States Supreme Court and the Third Circuit Court of Appeals have made clear that there is a "profound limitation" to federal court powers in the "sensitive relationship between courts of separate sovereigns." <u>In re James</u>, 940 F.2d 46, 53 (3d Cir. 1991).

In sum, Hudson goes to great lengths to refute Prime's analysis of the law, yet fails to cite a single case to support the Bankruptcy Court's unprecedented and unconstitutional determination that it may enjoin a nine-month old state court action against the successful purchaser -- not the debtor nor its assets -- alleging common law claims that are unrelated to the bankruptcy proceeding, and do not affect the bankrupt estate, or the administration thereof.  For these reasons, and all those enumerated herein and in Prime's initial brief on appeal, the Bankruptcy Court's December 3rd and 20th Orders must be reversed.

<u>LEGAL ARGUMENT</u>

Much of Hudson's opposition attempts to mischaracterize Prime's position so as to falsely conclude that Prime's legal analysis is contrary to established bankruptcy law.[2]  To be

_____

[2] Hudson also accuses Prime of introducing several new arguments on appeal and urges this Court to ignore Prime's critical legal

clear, Prime does not contend that bankruptcy courts have no jurisdiction to enter orders in the course of bankruptcy sale proceedings, and does not contend that bankruptcy courts have no jurisdiction to interpret and enforce those orders.

Prime does contend, however, that the Bankruptcy Court had no authority to enlarge its jurisdictional powers to release Prime's non-derivative common law claims against Hudson -- a non-debtor. The Bankruptcy Court's power to issue orders does not "broaden the bankruptcy court's jurisdiction, which must be established separately." In re Combustion Eng'g, Inc., 391 F.3d 190, 225 (3d Cir. 2004). "Bankruptcy courts can only act in proceedings within their jurisdiction." In re Resorts Int'l,

---

analysis. To the contrary, many of the "new" arguments were raised by Prime in its motion to stay the December 3, 2013 Order and during oral argument. See December 16, 2013 Transcript of Hearing before the Hon. Morris Stern, U.S.B.J. (Item 16), pgs. 7 (regarding irreparable harm), 7-9 (regarding abstention and comity), 12 (regarding due process and necessity of adversary proceedings). Even if Prime's arguments could be considered new, it is within the discretion of this Court whether or not to consider the arguments. See Wright v. Corning, 679 F.3d 101, 105 (3d Cir. 2012), cert. denied, 133 S. Ct. 1239, 185 L. Ed. 2d 177 (U.S. 2013) (explaining that the principle that an appellate court should not consider a new argument on appeal is "one of discretion rather than jurisdiction"). Notably, the Third Circuit has stated that this principle is "best applied to issues that are fact-dependent or the resolution of which on a basis not argued to the district court will surprise the parties." Id. at 105. Prime's allegedly "new" legal arguments do not involve any new factual content. The facts at issue in this matter have been extensively briefed and largely uncontested. Moreover, the legal arguments can come as no surprise to Hudson; most if not all of the cases cited by Prime in its initial brief on appeal were cited in the record below.

Inc., 372 F.3d 154, 161 (3d Cir. 2004). "The existence of a bankruptcy proceeding itself has never been and cannot be an all-purpose grant of jurisdiction." In re W.R. Grace & Co., 591 F.3d 164, 174 (3d Cir. 2009). Here, the Bankruptcy Court did not separately establish jurisdiction over Prime's claims against Hudson, and instead asserted its "historic and time-honored jurisdiction to interpret and enforce its own prior orders." See December 3, 2013 Opinion of the Hon. Morris Stern, U.S.B.J. (Item 1), pg. 36. However, with respect, the Court below went well beyond its jurisdiction, and its erroneous legal conclusions are entitled to no deference by this Court. See In re Lisanti Foods, Inc., 329 B.R. 491, 496 (D.N.J. 2005).

Moreover, numerous recent circuit court opinions have addressed the lack of jurisdictional power of a bankruptcy court to enter final judgment on non-derivative state law claims, such as Prime's claims against Hudson. See Stern v. Marshall, 131 S. Ct. 2594 (2011). A bankruptcy court may not "bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." Id. at 2618. For example, in Wellness Int'l Network, Ltd. v. Sharif, 727 F.3d 751, 766-67 (7th Cir. 2013), a creditor argued that a separate trust entity was actually the alter-ego of the debtor --

essentially a state law claim -- and that its assets should be treated as part of the debtor's bankruptcy estate.  In reversing the bankruptcy court, the Seventh Circuit concluded that the bankruptcy court had no constitutional authority to enter final judgment on the claim, and noted that the claim is a "state-law claim between private parties that is wholly independent of federal bankruptcy law and is not resolved in the claims-allowance process." Id. at 775.

The Seventh Circuit also concluded that the claim is not judiciable by the bankruptcy court even though it is intended to "augment the bankruptcy estate," and further reasoned that "while the alter-ego claim may have some overlap with the objections to discharge, nothing indicates that it has any relation to the claims-allowance process" as the resolution of the claim was not necessary to resolve any proof of claim filed in the bankruptcy.  See id. at 774-75.

Similarly, the Bankruptcy Court had no jurisdiction to enter an injunction permanently enjoining Prime from litigating its common law claims against Hudson, and effectively entering a final judgment. See id. at 778 ("default judgment or dismissal that completely eliminates the possibility of a decision on the merits is final for purposes of appeal").  Prime's common law tortious interference claims are between private parties, are wholly independent of federal bankruptcy law, were not necessary

5

for the determination of any proof of claim filed in the Christ Hospital bankruptcy proceeding, and at best tangentially share a factual background with the Christ Hospital bankruptcy. "That the factual circumstances of the [] claims arise from bankruptcy procedures does not alter the fact that bankruptcy judges are not Article III judges...The question is whether the nature of the [] claims allowed Congress to withdraw them from "the bounds of federal jurisdiction." In re Ortiz, 665 F.3d 906, 913-14 (7th Cir. 2011).

Further, the Bankruptcy Court's December 3rd and 20th Orders should never have been rendered; Prime's motion to withdraw the reference[3] sought to have this Court (which has jurisdiction over common law claims) determine whether its claims could be constitutionally enjoined by the Bankruptcy Court's Sale and Confirmation Orders. "[A] litigant can *mandate* withdrawal of the bankruptcy reference where the movant shows that, absent the withdrawal, the bankruptcy judge would be obliged 'to engage in significant interpretation, as opposed to

---

[3] Hudson's contention that Prime "purposefully delayed consideration" of the motion to withdraw the reference is ludicrous. See Hudson Opp. Br., pg. 4 fn. 1. Prime did not delay; rather, the Bankruptcy Court denied Prime's motion to stay pending resolution of the motion to withdraw the reference, and decided to move ahead with oral argument and decide Hudson's application for an injunction. This forced Prime's hand, and Prime had to consent to a hearing of its motion to withdraw the reference at a later date so as to prevent dual proceedings in the Bankruptcy and District Courts. At all times, Prime reserved its rights.

simple application, of federal laws apart from the bankruptcy statutes.'" <u>Picard v. HSBC Bank PLC</u>, 450 B.R. 406, 409 (S.D.N.Y. 2011) (citation omitted).   The determination by the Court below that the Sale and Confirmation Orders could constitutionally discharge Prime's claims against Hudson, and permanently enjoin Prime from filing an action against Hudson in the Superior Court, required an impermissible interpretation of the scope of federal jurisdictional law. <u>See</u> <u>Stern</u>, <u>supra</u>, 131 S.Ct. 2594. Now that the motion to withdraw the reference is finally before this Court, this Court has the opportunity to make proper conclusions of law, and render the Bankruptcy Court's erroneous December 3rd and December 20th Orders null and void.

**I.   Prime's State Law Claims Against Hudson Are Not Core**

Hudson argues at length that the Bankruptcy Court had core jurisdiction to enjoin Prime's claims against Hudson because "a suit requiring the Bankruptcy Court to interpret and give effect to previous sale orders is a core proceeding under 28 U.S.C. 157(b)(2)(N)." <u>See</u> Hudson Opp. Br., pg. 23.   This analysis is over-simplistic and plain wrong.   Bankruptcy courts may not use their power to issue, interpret and enforce sale orders in a manner otherwise inconsistent with the bankruptcy code. <u>See</u> <u>Combustion Eng'g</u>, <u>supra</u>, 391 F.3d at 236 (bankruptcy courts may not "create substantive rights that would otherwise be unavailable under the Code").   Accordingly, the mere existence

of Sale and Confirmation Orders in this case does not give the Bankruptcy Court the jurisdictional power to interpret and enforce the Orders to enjoin Prime's claims against Hudson.

Similarly, Hudson argues that the "type of protection from future suit that was granted by the Christ Hospital Sale Order pursuant to Section 363 of the Bankruptcy Code is available only through the Bankruptcy Code." See Hudson Opp. Br., pg. 27. Prime does not dispute that a bankruptcy court may order the sale of property "free and clear" of any interest in such property. See 11 U.S.C. 363(f). However, Prime's claims against Hudson for tortious interference with contract and unfair competition are not "interests" in Christ Hospital property. To the contrary, Prime's claims are created by common law, which exist notwithstanding Hudson's status as the successful purchaser of Christ Hospital. Indeed, if Hudson had not succeeded in purchasing Christ Hospital, or if Hudson had not participated in the Christ Hospital bankruptcy at all, Prime would still have claims against Hudson for tortious interference and unfair competition. This fact alone undermines the notion that Prime holds "interests" in Christ Hospital property.

Moreover, Hudson's primary citation, In the Matter of Met-L-Wood Corp., 861 F.2d 1012, 1027 (7th Cir. 1988) does not stand for the proposition that a bankruptcy court may sell interests

other than those in bankruptcy estate property.[4]  To be clear: an interest in property that may be sold free and clear is one wherein the debtor's "use and ownership of its assets [] gave rise to the successor liability claims[.]"  See In re USA United Fleet Inc., 496 B.R. 79, 85 (E.D.N.Y. Bankr. 2013); In re Trans World Airlines, Inc., 322 F.3d 283 (3d Cir. 2003) ("TWA").[5]

---

[4] Hudson's attempt to distinguish cases cited by Prime are similarly unavailing.  Hudson claims that In re Harris, 590 F.3d 730 (9th Cir. 2009) is inapposite because it involved a common law claim arising out of the trustee's administration of the estate, "not the enforcement of a Bankruptcy Court sale order[.]"  See Hudson Opp. Br., pg. 28.  However, Harris illustrates that a claim is not core pursuant to 28 U.S.C. 157(b)(2)(N) where it "does not challenge the bankruptcy court's order approving the sale of estate assets." Id. at 738.  Prime does not challenge the Bankruptcy Court's order approving the sale of Christ Hospital to Hudson.  Likewise, Hudson's attempt to distinguish In re Trans World Airlines, Inc., 278 B.R. 42, 49 (Bankr. D. Del. 2002) is flawed.  Hudson casually contends that it is "completely unsurprising" that the Court did not consider the adversary proceeding core because it did not involve the interpretation of a sale or confirmation order, all the while ignoring the remainder of the salient analysis set forth in the case.  Notably, the Court determined that it had "related to" jurisdiction over the adversary proceeding because "*the outcome of that proceeding could conceivably have [] effect on the estate being administered in bankruptcy*". Id. at 50 (citations omitted).  In stark contrast, Hudson has not cited any example of how this case will somehow unravel the sale of Christ Hospital or interfere with the administration of estate assets.  When put in this context, it is clear that Hudson merely seeks to avoid liability for its own tortious conduct, not to protect the integrity of the Christ Hospital bankruptcy sale.

[5] Noticeably absent from Hudson's opposition papers is any analysis of the numerous cases cited by Prime for the proposition that a bankruptcy court's ability to sell property free and clear of "interests" in property is intended to protect the successful purchaser from derivative successor liability claims.  See George W. Kuney, Misinterpreting Bankruptcy Code

**II.  Prime's State Law Claims Against Hudson Are Not Related to the Christ Hospital Bankruptcy Proceedings**

Hudson devotes less than one page of its brief in response to Prime's lengthy analysis of related-to jurisdiction, and cites a single case for the proposition that "core proceedings" would also be considered "related-to" proceedings.  In a footnote, Hudson attempts to distinguish two cases cited by Prime: Copelin v. Spirco, Inc., 182 F.3d 174 (3d Cir. 1999) and W.R. Grace, supra, 591 F.3d 164.  However, Hudson's analysis is plainly incorrect.  Crucially, in Copelin, 182 F.3d at 181, the Third Circuit rejected the argument that a "non-debtor party who is independently liable on a state court judgment may subvert that judgment and invoke core treatment from a bankruptcy court simply by assuming obligations of a debtor..."; not unlike Hudson's attempt to avoid liability for its own pre-petition tortious conduct by invoking its status as the successful purchaser of Christ Hospital.  Further, in W.R. Grace, 591 F.3d

---

Section 363(f) and Undermining the Chapter 11 Process, 76 Am. Bankr. L.J. 235, 267 (2002); see also In Re Trans World Airlines, Inc., 01-0056(PJW), 2001 WL 1820325, *5 (Bankr. D. Del. Mar. 27, 2001), aff'd, In re Trans World Airlines, Inc., 322 F.3d 283 (3d Cir. 2003) ("Authorizing the sale of TWA to American free and clear of the EEOC's successor liability claims achieves the purpose of § 363 intended by Congress").  Instead, Hudson merely contends that "[n]ot one of the authorities cited by Prime states that Section 363(f) is limited in this fashion; they just happen to be cases where the interest at issue involved successor liability."  See Hudson Opp.  Br., pg. 36. Hudson does not point to any case to support a conclusion to the contrary because there is none.

at 172, the Third Circuit explained that "in order for a
bankruptcy court to have related-to jurisdiction to enjoin a
lawsuit, that lawsuit must affect the bankruptcy without the
intervention of yet another lawsuit." Here, Prime's state court
lawsuit is "another lawsuit," and by Hudson's own admission,
Prime's claims against Hudson did not have any alleged impact on
the bankruptcy proceedings until the "filing of Prime's state
court lawsuit." See Hudson Opp. Br., pg. 29 fn 7. There is
simply no related-to jurisdiction in this case.

## III. Jurisdiction Is Limited Post-Confirmation

Hudson argues that the Bankruptcy Court had jurisdiction
over Prime's claims, post-confirmation, because it affects the
"interpretation, implementation, consummation, execution or
administration of the confirmed plan." See Hudson Opp. Br., pg.
31. While matters affecting the "interpretation,
implementation, consummation, execution, or administration of
the confirmed plan will typically have the requisite close
nexus," see Resorts Int'l, supra, 372 F.3d at 167 (emphasis
added), this is not the case here, where the matter could have
no conceivable effect on the estate being administered in
bankruptcy, see id. at 165. The Third Circuit explained:

> After confirmation of a reorganization plan, retention
> of bankruptcy jurisdiction may be problematic. This is
> so because...At the most literal level, it is
> impossible for the bankrupt debtor's estate to be
> affected by a post-confirmation dispute because the

debtor's estate ceases to exist once confirmation has occurred.

[Id. at 164-65.]

Indeed, Prime cited several cases in its initial brief wherein bankruptcy courts declined to exercise post-confirmation jurisdiction because the requisite "close nexus" was absent. See, e.g., In re Midway Games Inc., 446 B.R. 148, 152 (Bankr. D. Del. 2011); Zerand-Bernal Grp., Inc. v. Cox, 23 F.3d 159, 162 (7th Cir. 1994)). Hudson's thin analysis of the law does not, because it cannot, refute Prime's position that its state court lawsuit will have no conceivable effect on the Christ Hospital bankruptcy.

## IV. The Bankruptcy Court Wrote Its Own Jurisdictional Ticket, in Violation of Established Bankruptcy Law

While the bankruptcy court never explicitly stated that it had the power to confer itself jurisdiction; practically speaking, this is exactly what the bankruptcy court did. The Bankruptcy Code provides "no specific authority to extend a[n]...injunction to include third-party actions against non-debtors where the liability alleged is not derivative of the debtor." Combustion Eng'g, supra, 391 F.3d at 236. The power to "issue any order, process, or judgment" pursuant to 11 U.S.C. 105(a) "does not provide an independent source of federal subject matter jurisdiction" over a third-party action. See id. at 224-25. Rather, a bankruptcy court must establish subject

12

matter jurisdiction over the third-party action by finding that the action "would affect the bankruptcy without the intervention of yet another lawsuit." Id. at 227.   In this case, the Bankruptcy Court wholly failed to show how Prime's claims against Hudson could affect the Christ Hospital bankruptcy without the intervention of yet another lawsuit.   Indeed, the Bankruptcy Court itself conceded during oral argument that Prime could not have litigated its claims against Hudson in the Christ Hospital bankruptcy proceeding, and that another lawsuit would be necessary.   See October 22, 2013 Transcript of Hearing before the Hon. Morris Stern, U.S.B.J. (Item 2), T46:3-22 (explaining that Prime should have "come forward and say...I can't litigate here, Judge.").

Tellingly, Hudson devotes only a single footnote to Prime's analysis of and citation to Combustion Engineering, merely stating that Combustion Engineering is factually inapposite and "the Bankruptcy Court did make detailed jurisdictional findings." See Hudson Opp. Br., pg. 33 fn. 10.   Hudson's logic is circular -- the fact that the Bankruptcy Court made erroneous and unconstitutional jurisdictional findings does not mean that the Bankruptcy Court had jurisdiction to enjoin Prime's claims. Before a Bankruptcy Court may enter an injunction, it is required to make explicit jurisdictional findings as to whether it may constitutionally do so.   See Combustion Eng'g, 391 F.3d

at 237-38.   The Court below's jurisdictional findings were unconstitutional, and no injunction may issue.

**V.   The Bankruptcy Court's Finding That Hudson Was A Good Faith Purchaser Does Not Extend To Hudson's Pre-Petition Conduct**

The Third Circuit has stated that the requirement that a purchaser act in good faith "speaks to the integrity of his conduct <u>in the course of the sale proceedings</u>."  <u>In re Abbotts Dairies of Pennsylvania, Inc.</u>, 788 F.2d 143, 147 (1986) (emphasis added).   To oppose this plain and simple language, Hudson cites four non-binding cases (two of which are unpublished), for the proposition that bankruptcy courts have examined purchasers' and debtors' conduct both pre-petition and post-petition.   These cases are distinguishable for various reasons[6] and notably, none of the cases cited by Hudson involve a

---

[6] The first case, <u>In re Tempo Technology Corporation</u>, 202 B.R. 363 (D. Del. 1996) is factually inapposite; the debtor had already decided to file for Chapter 11 bankruptcy, and had entered into a pre-petition agreement with two entities to purchase its assets in bankruptcy, and to provide interim financing.   Not surprisingly, because the negotiations were part and parcel of the sale proceedings themselves, the bankruptcy court considered the pre-petition conduct. The second case, <u>In re Trans World Airlines, Inc.</u>, 01-0056-PJW, 2002 WL 500569 (D. Del. Mar. 26, 2002), has little if any relevance to this matter; the Court stated in a footnote that the bankruptcy court had appropriately rejected an argument that the timing of the bankruptcy filing and the expedited nature of the bidding process was "orchestrated" by the successful purchaser.  <u>Id.</u> at *1 fn. 1.   Prime does not contend that Hudson somehow manipulated the timing of the Christ Hospital bankruptcy filing or expedited the bidding process.   The third case, <u>In re Polaroid Corp.</u>, BKR. 01-10864-PJW, 2004 WL 2223301, *2 (D. Del. Sept. 30, 2004), simply noted that the "Debtor's assets had been

circumstance wherein the bankruptcy court determined that the successful purchaser was <u>not</u> a purchaser in good faith based on pre-petition conduct. To the contrary, it appears that in certain circumstances, bankruptcy courts may reference pre-petition conduct in addition to post-petition conduct in the interest of thoroughness.[7]

Hudson also now contends, for the first time, that Christ Hospital "made explicit" that it was offering up its pre-petition conduct as part of its evidence of good faith, referencing Christ Hospital's application in support of motions to approve the sale. <u>See</u> (A058-A059) ("the Debtor has marketed the Assets during the pre-petition period..."). Christ Hospital's marketing of its assets pre-petition has absolutely

---

effectively shopped before the petition was filed," a far cry from the meaning that Hudson would ascribe to it. The fourth case, <u>In re Camp Arrowhead, Ltd.</u>, 429 B.R. 546, 550-51 (W.D. Tex. 2010), is wholly inapposite in that it involved the sale of land by the debtor <u>prior to</u> its bankruptcy filing. A prospective purchaser of the land (who had allegedly signed an option contract to purchase the land), later claimed that the debtor's declaration of bankruptcy was a litigation tactic intended to avoid its obligations under the option contract, and that the buyer of the land was not a purchaser in good faith. In approving the sale of the land to the buyer, the bankruptcy court necessarily had to consider pre-petition conduct because the agreement to sell the land was made before the bankruptcy filing.

[7] Further, there is serious question as to whether a bankruptcy court may determine that a successful purchaser's pre-petition conduct is not in "good faith." As argued at length throughout this brief, bankruptcy court jurisdiction is limited, and pre-petition conduct by a successful bidder is not judiciable by a bankruptcy court under Article III.

no bearing on the Bankruptcy Court's analysis of Hudson's conduct in the course of the bankruptcy sale proceedings.

Hudson further contends, also for the first time, that the bankruptcy court somehow considered Hudson's pre-petition conduct because the bankruptcy court, in a single reference, stated:

> I made no secret of the fact that I was concerned that upon the filing of the [bankruptcy] petition, each of you, CH and Hudson, who were involved pre-petition, looks like you retrenched from at least prior tentative offers in terms of the dollars, and by a lot, not an insubstantial amount.

(A113).

Hudson cannot seriously contend that this fleeting reference somehow means that the bankruptcy court considered Hudson's pre-petition conduct in connection with its finding that Hudson was a purchaser in good faith. The referenced statement actually undermines this conclusion because the Bankruptcy Court expressed "concern" that Hudson retrenched from prior pre-petition offers to purchase Christ Hospital, and noted that it is "never happy with the notion that in bankruptcy people are bottom fishing as I use the term[.]" See (A113).

## VI.        Prime Was Not On Notice That Its Claims Were Included in the Sale Order

Notwithstanding the fact that Prime did not believe the Bankruptcy Court had jurisdiction to enjoin its claims against Hudson in the Sale or Confirmation Orders, Prime's mere receipt

of these Orders is insufficient notice to allow the Bankruptcy Court to sell Christ Hospital to Hudson "free and clear" of Prime's claims.   In <u>In re S. White Transp., Inc.</u>, 725 F.3d 494, 496-98 (5th Cir. 2013), the Fifth Circuit explained that "passive receipt of notice" does not constitute participation in the bankruptcy proceedings, and that without participation, an entity's claim may not be voided by a free and clear sale. "'[P]articipation' connotes activity, and not mere nonfeasance." <u>Id.</u> at 497.   <u>See also</u> <u>Matter of Penrod</u>, 50 F.3d 459, 462-63 (7th Cir. 1995).

Further, a complete reading of the Sale Order demonstrates that it only relieves Hudson from liens and claims originally assertable against the debtor and the debtor's assets. Paragraph 18 of the Sale Order states: "all parties and/or entities asserting Liens and Claims and contract rights <u>against the Debtor and/or any of the Assets</u> are hereby permanently enjoined..." <u>See</u> March 27, 2012 Sale Order (Item 3), pg. 13 (emphasis added). Under the Sale Order, Prime's state court lawsuit against Hudson would not be considered such a Lien or Claim: the Order provides that Liens and Claims *against the debtor's assets* will be "unconditionally released, discharged, and terminated..." <u>See</u> <u>id.</u>, pg. 10. It makes no legal sense to contend that Prime could assert a lien or claim against Christ Hospital and its assets to obtain compensation for Hudson's pre-

petition tortious conduct.   This is made even clearer when one considers an alternate scenario wherein Hudson was not the successful purchaser of Christ Hospital.

Prime cannot be said to be on notice that its claims against Hudson would be enjoined because its claims were not "dealt with" during the Christ Hospital bankruptcy proceedings.[8] In addition, Hudson fails to cite any case law to support its proposition that a single fleeting reference to "a deal with somebody else" could put Prime on notice that its claims against Hudson would be enjoined. See Mar. 23, 2012 Hearing Transcript (Item 17), T84:8-85:4.   Despite Hudson's earlier contention that the Court below considered Hudson's pre-petition conduct in connection with its good faith analysis, Hudson ultimately agrees with Prime that Prime's claims were not before the Bankruptcy Court when it claims: "The reason that Prime's claims were not before the Bankruptcy Court is that Prime did not raise them..." See Hudson Opp. Br., pg. 45.   Hudson cannot have it both ways.

---

[8] Hudson ignores Prime's controlling citation to Lefever v. K.P. Hovnanian Enterprises, Inc., 160 N.J. 307, 319-21 (1999) which found that a products liability claim could not have been discharged by the bankruptcy proceedings where the claim was not "dealt with" by the bankruptcy court and no notice was given to claimant of possible discharge.

**VII.    Prime Did Not Consent To the Free And Clear Sale Of Christ Hospital Assets**

It is undisputed that Prime did not explicitly consent to the free and clear sale of Christ Hospital assets.  Prime did not participate in the Christ Hospital bankruptcy, and even if the mere filing of a notice of appearance could be considered participation[9], Prime's failure to object to the Sale and Confirmation Orders does not equate to consent.  Hudson contends that <u>FutureSource LLC v. Reuters, Ltd.</u>, 312 F.3d 281 (7th Cir. 2002) (which the Bankruptcy Court relied upon to indicate that silence constitutes consent) has not been criticized in this circuit and is accordingly good law.  However, <u>FutureSource</u> has only been cited once in this circuit at all -- by the Court below.  There is good reason for this: <u>FutureSource</u>'s analysis is problematic, and has absolutely no precedential value.  Numerous courts have held that silence cannot equate to consent in the context of a Section 363 sale.[10]

_____

[9] Hudson's contention that Prime "had a direct financial interest in the outcome of the bankruptcy proceeding," <u>see</u> Hudson Opp. Br., pg. 8, is a red herring.  Although Prime had last-out participation rights in a loan issued by a third party to the debtor, neither Prime nor the primary lender asserted any claim based upon those rights in the bankruptcy proceedings, and no claim based upon the loan at issue appears on the claims register.

[10] In <u>In re DeCelis</u>, 349 B.R. 465, 468-69 (Bankr. E.D. Va. 2006), the Eastern District of Virginia Bankruptcy Court explained:
>        The distinction between silence and consent is clear.
>        Unless there is a duty to speak, silence signifies

19

Hudson's citation to outdated pre-<u>Continental Airlines</u> caselaw is ill-placed.  In <u>Continental Airlines</u>, <u>supra</u>, 203 F.3d at 214 fn. 11, the Third Circuit made clear that non-consensual releases are of questionable validity, and did not limit this finding to releases under Section 524(e), as Hudson suggests. <u>See</u> Hudson Opp. Br., pg. 50.  Prime did not participate in the Christ Hospital bankruptcy proceedings, and certainly did not consent to any of the actions taken therein.

**VIII.   Prime's Seventh Amendment Rights Are Violated by the Bankruptcy Court's December 3rd and December 20th Orders**

Hudson's contention that "there was no matter before the Bankruptcy Court that was triable to a jury," thus eliminating Seventh Amendment issues, <u>see</u> Hudson Opp. Br., pg. 52, is simply incorrect.[11]   By asserting jurisdiction over Prime's claims

---

nothing.  The Bankruptcy Code imposes no duty to respond to notices.  The "notice and hearing" process permits the court to take certain actions if there is no objection...That, though, is different from consent, an act affirmatively approving the proposed action.  Had Congress intended silence to be consent in § 363(f)(2), it knew how to say so.  It did not. <u>See also In re Roberts</u>, 249 B.R. 152, 155 (Bankr. W.D. Mich. 2000); <u>In re Smith</u>, BR 13-61627-TMR7, 2014 WL 738784 (Bankr. D. Or. Feb. 26, 2014); <u>In re E. Airport Dev., LLC</u>, 443 B.R. 823, 831 (B.A.P. 9th Cir. 2011).

[11] In <u>Langenkamp v. Culp</u>, 498 U.S. 42 (1990) the Supreme Court ruled that a creditor who does not submit a proof of claim against the bankruptcy estate does not "subject[] himself to the bankruptcy court's equitable power," and is therefore entitled to a jury trial on its claims.  <u>Id.</u> at 44.  Prime filed no such

against Hudson, and by enjoining them so that Prime will be unable to litigate its common law claims in state court, before a jury, the Bankruptcy Court has denied Prime its Seventh Amendment right to a jury trial. Hudson cannot argue that Prime participated in the Christ Hospital bankruptcy proceedings and consented to the release of its common law claims and, at the same time, argue that its common law claims (which were triable to a jury) were not "before the Bankruptcy Court." Id. Again, Hudson cannot have it both ways.

## IX. The Bankruptcy Court Should Not Have Heard Hudson's Application in the Interest of Comity and Abstention

Despite Hudson's assertions, comity is not limited to a single legal or factual context; the doctrine applies in all contexts to avoid tension between federal and state judiciaries. Moreover, Hudson relies on oversimplification to argue that Younger abstention is not reviewable or applicable. "Any decision to abstain or not to abstain...is not reviewable by appeal or otherwise by the court of appeals." 28 U.S.C. § 1334(d) (emphasis added). District Courts may thus review the decisions regarding permissive abstention made by a bankruptcy court. See, e.g., In re BWP Gas, LLC, 354 B.R. 701, 705 (E.D. Pa. 2006). Further, abstention is required where "exercise of the federal judicial power would disregard the comity between

_____

proof of claim, and was entitled to a jury trial on its state claims.

the States and the National Government." Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 (1987).

Hudson argues that the Superior Court's decision is not entitled to preclusive effect because it was interlocutory. Again, Hudson misses the point. The principles of comity "apply whenever federal courts are asked to review state action or supersede state proceedings." Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 532-33 (1982) (Powell, J. dissenting). The Third Circuit has expressly held that "[F]ederal collateral review of a state proceeding is inappropriate." James, supra, 940 F.2d at 52 (emphasis added).

Last, the order of the state court is not *void ab initio*. Two of the cases cited by Hudson in support of this argument involve claims against the debtor or property of the debtor in violation of the automatic stay and are clearly inapplicable to this matter. The remaining opinion, Hamilton v. Herr, 540 F.3d 367 (6th Cir. 2008), does not apply here because the Superior Court trial judge's decision was a proper interpretation of the Christ Hospital bankruptcy orders. See also Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 649 (1st Cir. 1972) ("Only in the rare instance of a clear usurpation of power will a judgment be rendered void.").

**X.   The Doctrines of Res Judicata and Collateral Estoppel Do Not Bar Prime's State Court Action**

Hudson suggests that this Court should consider, on an alternative basis, arguments that were rejected by both the Bankruptcy Court and the Superior Court, premised upon the frivolous assertion that Prime somehow litigated its claims against Hudson for tortious interference and unfair competition in the Christ Hospital bankruptcy proceeding. However, as detailed at length throughout this brief, the Bankruptcy Court did not hear evidence, consider, or make findings on Hudson's pre-petition conduct.

In order to invoke *res judicata*, a party must establish three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." Marmon Coal Co. v. Dir., Office of Workers' Comp. Programs, 726 F.3d 387, 394 (3d Cir. 2013) (citing Duhaney v. Att'y Gen., 621 F.3d 340, 347 (3d Cir. 2010)). However, "application of [the *res judicata*] doctrine in bankruptcy cases is not as straightforward as in other cases." In re Mariner Post-Acute Network, Inc., 267 B.R. 46, 53 (Bankr. D. Del. 2001). In the bankruptcy context, "the same parties may be involved in numerous contested matters dealing with their relationships, but they are not typically expected to litigate all matters at once." Id. To require

23

otherwise "would bring bankruptcy cases to a halt." Id.
Accordingly, the Third Circuit has narrowly interpreted *res
judicata* where the previous litigation was a bankruptcy case,
stating:

> Difficult as it may be to define the contours of a
> cause of action in a bankruptcy setting, we conclude
> that a claim should not be barred unless the factual
> underpinnings, theory of the case, and relief sought
> against the parties to the proceeding are so close to
> a claim actually litigated in the bankruptcy that it
> would be unreasonable not to have brought them both at
> the same time in the bankruptcy forum.

[E. Minerals & Chemicals Co. v. Mahan, 225 F.3d 330, 337-38 (3d
Cir. 2000) (emphasis added).]

Prime's claims against Hudson are not based on the same
nucleus of operative facts as involved in the bankruptcy
proceeding.  Rather, Prime's claims are non-derivative and do
not relate to the debtor or the estate.  Moreover, Prime could
not have brought its state law claims in the Bankruptcy Court
because the Bankruptcy Court simply has no jurisdiction over
those claims under Article III.

Hudson's arguments in support of collateral estoppel are
similarly unavailing,[12] as none of the requirements under Jean

---

[12] Hudson's reliance on Farmland, supra, 376 B.R. at 727 is
factually inapposite.  In Farmland, the Court dismissed a
tortious interference claim by an unsuccessful bidder that was
entirely based upon the conduct of the debtor and the successful
bidder during the sale process.  The Farmland Court held that
the tort claims were barred by the doctrine of collateral
estoppel because the bankruptcy court had already found the
successful bidder acted in good faith.

Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006)[13] are satisfied, nor has Prime "had a full and fair opportunity to litigate the issue in question in the prior action," as is required by Third Circuit law.   Id.

## XI.  Prime Would Suffer Irreparable Harm Absent a Stay

Hudson's arguments that Prime will not suffer irreparable harm are misleading.  The Bankruptcy Court's December 3rd and 20th Orders constitute egregious violations of Prime Healthcare's due process rights, and even accepting Hudson's premise that the violation of procedural due process does not "automatically" constitute irreparable harm absent some other showing, the procedural due process violations in this case are unparalleled.  This, in conjunction with the irreparable damage to Prime's goodwill and reputation, and the risk of mootness, is irreparable harm.

---

[13] The Third Circuit has identified four standard requirements for the application of collateral estoppel:(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.  Jean Alexander, supra, 458 F.3d at 249.

## CONCLUSION

For all these reasons, Prime respectfully requests that this Court reverse the December 3rd and December 20th Orders of the Bankruptcy Court.

Respectfully submitted,


By: /s/ Bruce S. Rosen
     Bruce S. Rosen
     William S. Katchen
     Sarah L. Fehm
     Zachary D. Wellbrock

Dated:    March 19, 2014